## The People on the relation of Emil P. Benoit v. George Miller.

*Officer: Qualifying: Certificate: Ouster: Judgment: Damages.* Where an officer, duly elected, is kept out of office by one to whom the returning board has given a certificate of election, he is not at fault for not qualifying before he has obtained judgment of ouster, as such an attempt might be nugatory, in the absence of the documentary title. He is, therefore, entitled to recover damages for the whole official term, from the beginning, until he obtains possession of the office.

*Damages for being kept out of office: Salary: Services of incumbent.* He is entitled to recover for that period the entire official salary, without any deduction for the services of the incumbent, or for what he may have earned himself while ousted. An official salary is not made dependent on the amount of work done, and belongs to the office itself, without regard to the personal services of the officer.

PEOPLE *v*. MILLER.

*Measure of damages: Office expenses, etc.* How far deductions might be proper for necessary office expenses, and what measure of damages would be proper where specific services are paid for only as they are actually performed, are questions not raised in this case, and not decided.

*Heard April 6. Decided April 10.*

Information in the nature of *quo warranto*.

*William A. Moore* and *Theodore Romeyn*, for the respondent.

*E. W. Meddaugh* and *George V. N. Lothrop*, for the relator, were stopped by the court.

CAMPBELL, J.

In this case, which is a proceeding in *quo warranto*, originating in this court, the defendant was convicted of an unlawful intrusion into the office of treasurer of Wayne county, the proceeding having been commenced at once after the beginning of the official term in 1867, and the ouster laid as of the earliest period of that term.

Judgment having been rendered in favor of the relator, he filed his suggestion of damages, under section 5297 of the compiled laws, and they have been assessed at three thousand three hundred and forty-seven dollars and thirty-three cents, being confined to the official salary, without fees or other perquisites.

Motion being made for judgment, it is opposed, on the ground that the judge before whom the issue was sent down to be tried, refused to allow in reduction of damages evidence of the value of Miller's services, or of Benoit's earnings in other pursuits while kept out of the office, or that Benoit did, and offered to do, nothing towards the discharge of the official duties.

Before considering the principal legal questions touching the measure of damages, a preliminary question requires attention. It is claimed that Miller, having been in office during the preceding term, was bound to hold over until

his successor was elected and qualified, and that as Benoit
did not qualify until after the judgment of ouster, Miller's
right to the salary and his duty to hold over continued.

It would be a sufficient answer to this to refer to the
judgment already given, which is conclusive against any
pretense of a lawful holding over. That would have been
a complete defense to the original action, if there had been
any foundation for the claim. But there is no foundation
whatever for any such pretext. The defense in this case
rested upon a new election, and a title thereby, certified by
the proper authority to be in Miller, and his taking steps
to qualify. That action precluded Benoit from qualifying,
and his attempt to do so would probably have been nugatory.
He could not be compelled to tender his qualifying papers
to officers who had already acted, or who had no evidence
of his rights. The law expressly allows an officer ousted
by another to qualify after he obtains judgment in his
favor.—*Comp. L.*, § *5295 ; People v. Mayworm, 5 Mich. R.,
146 ; People v. Miller, 16 Mich. R., 56.*

The effect of this judgment is to decide that, from the
beginning of the official term, in the year 1867, Miller was
in office wrongfully, and Benoit was during that whole
time wrongfully excluded. His right to damages covers the
whole time of exclusion.

The only question, therefore, is whether any deduction
should have been made from the official salary, for Miller's
services, or Benoit's outside profits and earnings.

The case finds expressly that the whole office and con-
tingent expenses, and the services of the deputy and clerks,
were paid by Wayne county. No expenditures of Miller
are in controversy, for he had none to make. There are
no ascertainable pecuniary deductions in question.

We do not find any reason or authority for holding that
the good faith of the intruder can make any difference

touching the pecuniary value of the office to the person kept out. His damages are to be measured by what he has lost, and his loss cannot be lessened by any such consideration. In the present case, however, it is admitted Miller knew all the facts which gave the legal right to the relator, and whether he knew the law or not, he must be held responsible for such knowledge; and so he has neither equity nor legal claim to favor on any such ground.

The case, therefore, is very free from disturbing elements, and the principles which ought to settle it are not complicated. There are not many decisions fixing special rules for the measure of damages, but there are familiar principles which will enable us to come to a safe conclusion.

The old remedy for disseisin of offices of profit seems to have beem by *assise,* and the suit was allowed by analogy to proceedings for the recovery of possessions in lands and their appurtenances.—*Com. Dig. "Assise"* (B. 1), (B. 2); *Bac. Ab., "Assise," "Office."* So far as this analogy holds, it would not permit any deduction from the recovery of damages based on personal services of the disseisor, or on the outside profits of the disseisee.

It is no answer to an action for *mesne* profits that the plaintiff has made more money in other business than he would have done by farming. And it would be a strange doctrine to hold that a trespasser could claim compensation for his personal services in clearing or improving land against the owner's claim of entry. But none of these analogies are perfect, and it might not be quite safe to follow them implicitly, although the law concerning trespassers and disseisors of all kinds is not subject to very many variations.

In such offices as the one now in question, there are very few, if any, duties, which cannot be performed by deputy. There are duties for which no specific payment is

made, and which are compensated by the salary, and there are duties which are paid for by fees, or other perquisites, only earned by performing those specific duties. There may be reason for deducting from any official earnings the actual cost of obtaining them, which would have been entailed on any person who might have held the office.

It is difficult to see how any such question could arise here, because all that expense is paid by the county. How far there might be a recovery for separate perquisites for actual services rendered to individuals or to the public, but which might or might not have become necessary and might not have been called for, we are saved from considering by the withdrawal of the claim for those items. The claim left is very simple.

The official salary is not made dependent on the amount of work actually done by the treasurer, and does not require his personal services to any considerable extent. He would not forfeit it by leaving the bulk, or possibly the whole, of his substantial duties to the deputy and clerks. He would not necessarily lose it even by misconduct unless removed from office. It is given, no doubt, on the theory that a treasurer is worth so much to the county; but not upon any specific apportionment whereby the value of his time and his sagacity, and his character, and his business knowledge can be determined separately. But whatever may be the basis of the allowance, it is fixed upon the theory that it will usually be paid to a person who has been selected by the electors or appointing power as a desirable incumbent. The amount of personal labor done by the officer can form but a small part of his claim to the salary in such an office as this, and he may be much less competent than his deputies.

But whether it be or be not important that this personal labor should be expended,—and in some offices

it must be,—the inquiry here is, how far it can be regarded as proper to make the person who has been kept out of the office pay for the services of the wrong-doer. They are not services done for him personally. They are not services done at his request, or by his consent. They are services which it must be assumed he would have been willing to perform himself, if not prevented by the intruder.

No rule of law permits one to make another his debtor in spite of his protest and against his will. There are some cases where the law raises an implied assumpsit though there has been no express agreement, but none where it could be raised in favor of a naked trespasser. The money which Miller received from the county was paid to him because he was an officer *de facto*, and as the perquisites of office, and not for private services independent of official character. Having received it as official property he must restore it as such. An intermeddler might as well charge a commission on rents collected of tenants without authority from the landlord, as an intruder into office claim pay for his personal services from the legal officer whom he has kept out. Miller's services were not rendered with any design of benefiting Benoit. He cannot now assume the position that he was an agent, or servant, or a benefactor. Where there are no relations there can be no duties, and no claim for services.

There is, we think, no foundation for any claim to a deduction on account of Benoit's profitable use of the time during which he was kept out. In private dealings, whether of individuals or private corporations, a person wrongfully excluded from service or office may be fairly expected to do what he can to gain employment, and if he gets it, he should not be allowed double pay for time which belongs to his employer; but should receive no more for his damages than he has suffered. But

this is on the ground that all private relations of that kind, by whatever name they may be called, really rest more or less on contract; and actions for such injuries are very much governed by the rules applicable to contract. No deduction can be claimed for time which does not belong to the employer.—*Geiger v. Harris, 19 Mich. R., 209.*

Public offices have always been regarded as resting on very different grounds. A person who usurps public office commits a punishable misdemeanor, where the public and not the person excluded is the party directly injured. The perquisites are annexed to the office as such on grounds of public policy, and do not change their legal character by the amount of labor involved in the official duties. There are sinecure or honorary offices, there are offices which may be fulfilled entirely or chiefly by deputy, and there are offices where everything must be done in person. The *assise* lay in the one case as well as in the other, and lay for the deprivation of office and of official perquisites. It sounded in *tort* and not in *assumpsit*, and recognized no relation between the party wronged and the wrong-doer. The right to a deduction can only spring from a duty dependent on a legal relation. The mere wrong-doer must be regarded as acting throughout in defiance of his adversary, and as a stranger to him in all respects.

It was well suggested by the relator's counsel that salaries are not universally fixed at a rate beyond what might be earned in other pursuits, by men selected to fill the offices. There are very few cases where it would be a serious pecuniary damage to be kept out, and many where it would probably be profitable to be excluded. But the common law, and every system of law, recognizes the fact that it is a positive wrong to exclude a rightful claimant from office, whether of pecuniary value or not. The only difference is that under a pecuniary standard the damages are not so

PEOPLE v. MILLER.

purely discretionary as where the office is honorary. But it would lead to very absurd results if the *quantum* of damages could be reduced by outside earnings.

Judgment must be rendered on the verdict for the damages assessed, with costs.

COOLEY and GRAVES, JJ., concurred.

CHRISTIANCY, CH. J., did not sit in this case.