## McCue v. The County of Wapello.

1. **Practice:** FINDING: PRESUMPTION OF REGULARITY. Findings of fact or law made by a court will be presumed to have been made in compliance with the provisions of the statute authorizing such findings, unless the contrary is shown.

2. **Public Officer:** OFFICER DE FACTO: RIGHT TO FEES. The rule of law recognizing an officer *de facto* in discharging the duties of the office is for the benefit of the public, and does not extend to controversies between him and the officer *de jure*, as against whom he must be considered an intruder and not entitled to claim the emoluments of the office, the right to which is dependent upon the right to its possession.

*Appeal from Wapello District Court.*

FRIDAY, OCTOBER 21.

ACTION at law to recover for services rendered by plaintiff as sheriff of the defendant county. The cause was tried to the court without a jury and judgment rendered for plaintiff. Defendant appeals. The facts of the case appear in the opinion.

*Moore & Hammond,* for appellant.

*William McNett* and *H. B. Hendershot,* for appellee.

BECK, J.—I. The petition alleges that plaintiff between the 19th day of September, 1878, and the 7th day of April, 1879, was acting sheriff of Wapello county, and, in the discharge of his duty as such officer, he rendered certain services and expended certain sums of money, for which, together with an amount due him as salary, he seeks to recover in this action. The answer denies the allegations of the petition and avers the facts connected with plaintiff's claim to be substantially as set out in the finding of the court, which will hereafter appear. It further alleges that plaintiff performed the services and made the expenditures sued upon as deputy of the sheriff of the county, and that whatever claim he has therefor should

be made against and adjusted with the sheriff for the services and outlay in question. Upon the issues thus presented the cause was tried to the court.

II. The plaintiff filed an amended abstract setting out the facts and conclusions of law found by the District Court, which defendant moved to strike for the reason that neither of the parties requested the court to make such findings. In support of this motion counsel for defendant insist that, to authorize the court to find specially the facts and conclusions of law, a request therefor must be made at least by one of the parties to the action. This position is based upon Code, section 2743. For the purposes of this case we may admit, without, however, so deciding, that this position is correct. But as the court has made the finding, in the absence of a contrary showing in the record, we will presume it was done in pursuance of the request of one of the parties. Acts of the court of this kind done in the progress of a case are presumed to be in accord with the law. Presumption as to the regularity of the proceedings of courts will always be exercised; errors in such proceedings must always be affirmatively shown. Under these familiar rules we must regard the findings of the court as authorized by the statute, even if it bear the construction insisted upon by defendant's counsel. The motion must be overruled.

*1. PRACTICE: finding: presumption of regularity.*

III. The findings of the court are as follows:

"1st. I find that at the general election, held in 1877, D. W. Stewart was elected to the office of sheriff of Wapello county, Iowa; that at the proper time he qualified as such officer and entered upon the duties of said office; that he appointed as his deputies the plaintiff, W. D. McCue, and Q. A. Wood, who each qualified as such deputies and each entered upon the discharge of the duties of deputy sheriff. The duties of said Wood were confined mostly to the care of the jail, and the prisoners confined therein; and the duties of the plaintiff were confined mostly to the service of processes, etc.

" 2d. That at the August term, in 1878, of the District

Court of said county, the grand jury presented an indictment against the sheriff, D. W. Stewart, charging him with the crime of extortion, and the court, on the 19th day of September, 1878, suspended him from office under section 756 of the Code.

" 3rd.  That at the time the court suspended Stewart from office it appointed the plaintiff to the same office, for the balance of the term, under section 753 of the Code.

" 4th.  That said plaintiff at once entered upon the duties of the office, took possession of the books and papers pertaining to the same; took control of the jail and prisoners therein, the said Wood continuing to act as jailor, but under the direction of the plaintiff.

" 5th.  That D. W. Stewart, after his suspension from office by the court, did not perform or attempt to perform any of the duties pertaining to said office from the 19th day of September, 1878, to the 1st day of March, 1879.

" 6th.  That on the 11th day of October, 1878, the board of supervisors of Wapello county appointed Thomas Bedwell sheriff, in the place of Stewart, suspended.  Said Bedwell qualified and performed some of the duties of the office.

" 7th.  That the plaintiff, after his appointment by the court, to the time of the appointment of Bedwell, performed, either by himself, or others acting under him, including Wood, the jailer, all of the duties of the office; that said Wood recognized the plaintiff as sheriff and took his instructions from him.

" 8th.  That after Bedwell was appointed by the board the plaintiff denied his authority to act as sheriff, and retained possession of the books and papers of the office and the control of the jail, and continued to perform the duties of sheriff, under a claim of right; that Bedwell had at no time, charge of or control over the said books and papers, or the jail, or the prisoners confined therein.

" 9th.  That said Bedwell or no other person commenced any action against plaintiff, to determine his right to the of-

fice. But said Bedwell did petition the Circuit and District Courts when in session, to recognize him as the sheriff instead of McCue; that the Circuit Court did so recognize him as sheriff during most of the October term, 1878, of said court. But the District Court at the January term, 1879, refused to recognize Bedwell as sheriff, but recognized the plaintiff, who seemed to be in the possession of the office under a claim of right, and had the custody of the books and papers belonging to the office, and the control of the jail, and the prisoners confined therein.

"10th. That the plaintiff performed most of the duties of the office during the time aforesaid, from the 19th day of September, 1878, to the 1st day of March, 1879, publicly, openly, and under a claim of right to the office; that he performed many of said duties at the request of public officers and the court; that in whatever he did he acted in good faith, and claimed the right to the office, and to perform its duties, under the advice of able attorneys.

"11th. That the defendant had knowledge of his claim, and the board of supervisors audited and allowed bills presented by him for such services to the amount of $1,000 or more, about $400 of which was for dieting prisoners, sent to prison by the city authorities.

"12th. That on the 1st day of March, 1879, the said District Court vacated the order of suspension, holding that the record did not show authority to make it, and restored Stewart to the office of sheriff.

"13th. That during the time the order of suspension was in force Stewart took no appeal from it, and that he performed none of the services, directly or indirectly, for which the plaintiff claims compensation.

"14th. That Stewart, after the order of suspension was revoked, presented a claim to the board of supervisors for dieting prisoners, which embraced the same charges presented by plaintiff for such services; that the board allowed Stew-

art's claim, but at the same time had knowledge that plaintiff claimed pay for such services.

"15th. That Stewart had no legal claim against the county for said services, and the payment by the board to him is no bar to plaintiff's claim.

"16th. That the plaintiff expended in dieting prisoners, and expenses connected with the jail, and incurred in the discharge of the duties of sheriff, from $1,000 to $1,200.

"17th. That the plaintiff, during the time aforesaid, was sheriff *de facto;* that he performed said services under a claim of right, in good faith, and was not a mere intruder in said office.

"18th. That the claims sued upon were duly presented to the board of supervisors for allowance, and the board refused to allow them, before this suit was brought."

It will be observed that the fifteenth, sixteenth, and seventeenth findings presents conclusions of law. The court also found as a conclusion of law " that the plaintiff is entitled to compensation for all services actually rendered to the public, and for such services he should receive the fees provided by law and paid to the sheriff for like services." Other conclusions of law found by the court relate to the amounts found due the plaintiff upon the several items of his account; they need not be presented here.

The evidence shows without conflict that after the order for the removal of Stewart, no change was made in the business of the office, except that Stewart performed no duties connected with the office though he continued about the sheriff's office. The plaintiff continued to use the horses and vehicles owned by Stewart and used by him and his deputies in official services. Some provender bought by Stewart and on hand at the time of his removal was used by plaintiff. No compensation was paid Stewart for the use of the horses or for the provender. The testimony shows without conflict that plaintiff apprehended trouble from Bedwell alone, whose

claim to the office he successfully resisted, and it may be found that in this he was assisted by Stewart.

IV. The order suspending Stewart from the office of sheriff was at a subsequent term revoked on the ground that it was made "without authority." This revoca-

2. PUBLIC OF-
FICER: offi-
cer de facto:
right to fees.

tion stands as an adjudication binding upon all parties concerned. If the order was made "without proper jurisdiction or authority," and it is so declared in the judgment setting it aside, it is void. If void Stewart never ceased to be sheriff. He was the sheriff *de jure* while plaintiff as sheriff *de facto* was discharging the duties of the office. This view seems to have been entertained by the court below, and is conceded by counsel on both sides of the case. It is surely correct.

The District Court found that plaintiff was, during the time the services in question were rendered, sheriff *de facto*, acting in good faith under a claim of right to the office, and is, therefore, entitled to recover the compensation provided by law for such services. Here is the decisive error of the learned judge of the District Court. The doctrines of the law applicable to officers *de facto* do not extend so far as to confer upon them all the rights and protection to which an officer *de jure* is entitled. The doctrines operate only for the protection of the public. They cannot be invoked to give him the emoluments of the office as against the officer *de jure*. Upon this very point we used the following language in *McCue v. The Circuit Court of Wapello County*, 51 Iowa, 60 (67). "It will be remembered that one exercising the power of an officer without lawful authority is regarded as an officer *de facto*, not for his own protection or advantage, but for the protection of the public and those who are doing business with him. When his right to the possession of the office is to be determined he cannot be declared an officer *de jure* on the ground that he has been an officer *de facto*." We may add that the right to the possession of an office carries with it the right to emoluments pertaining to the place. When

an officer seeks to recover these emoluments he must show his right to the possession of the office. The rule is based upon the ground that the officer *de jure*, who has been ousted from his place by an intruder, has a property interest in the emoluments of the office, of which he cannot be deprived by one having no title thereto. This property right demands protection, and the officer *de facto* cannot recover emoluments to which the officer *de jure* is entitled. No such right intervenes when the acts of a *de facto* officer done in the discharge of the duties of the office are considered. The rights and protection of the public and all persons transacting business with the officer demand that such right be held valid. But when the question involving the emoluments of the office are considered, the rights of the officer *de jure* forbid that the intruder be regarded as the officer.

The case of a *de facto* officer is not unlike that of one in possession of land without right or title. He may in many things lawfully act as the owner of the realty, but he must account to the person holding the title for the rents and profits. These views we think are supported by the following cases: *Glascock v. Lyons*, 20 Ired., 1; *Comstock v. Grand Rapids*, 40 Mich., 397; *Riddle v. Bedford*, 7 S. & R., 386; *People v. Dorsey*, 28 Cal., 21; *People v. Oulton*, Id., 44; *Carroll v. Siebenthaler*, 37 Cal., 193; *People v. Webber*, 86 Ill., 283; *Mayfield v. Moore*, 53 Ill., 428; *People v. Miller*, 24 Mich., 458.

V. The principle upon which our conclusion is based, viz., that an officer *de jure* is entitled to the emoluments of the office, is recognized by the statute of this State providing for contesting the election of a county officer. A special court is provided for the trial of cases growing out of such contests. It will be observed that the trial under the provision of the statute will ordinarily be had before the commencement of the term of the office in contest. But if an appeal be taken by a party in possession of the office the judgment will not be suspended unless he execute a bond obli-

gating himself to pay all compensations received by him after the judgment appealed from was rendered to the other party should he be successful in the appeal. If the appeal be affirmed judgment will be rendered upon the bond for damages, which will, of course, cover the compensation received by the appellant. See Code, §§ 692, 716, 717. In case of an appeal by an incumbent of an office under these provisions, it cannot be doubted that pending the appeal he is to be regarded as the officer *de facto*, and that after the appeal is affirmed the other party is to be regarded as the officer *de jure*. The statute in these provisions require the *de facto* officer to pay the compensation he receives for services rendered by him to the officer *de jure*. This is just what we hold in this case.

VI. The court bleow found that plaintiff held the office under a claim of right and in good faith, and that he was not a mere intruder. The good faith and claim of right of an officer *de facto* cannot affect the rights of the officer *de jure* to emoluments of the office, nor will these things deprive the incumbent of the character of an intruder. Good faith and claim of right are usually, if not always, exercised by *de facto* officers; if they be absent he is criminally liable. Code, §§ 3962-3. The officer *de facto*, when the rights of the *de jure* officer are considered, must be regarded as an intruder even though he claim the office in good faith. This conclusion is supported by the authorities just cited.

We reach the very satisfactory conclusion that plaintiff is not entitled as an officer *de facto* to recover the emoluments of the office; that Stewart, the officer *de jure*, is entitled to all of them, and that defendant is not liable in this action.

VII. The fact that plaintiff actually performed the services, and made the outlays for which he sues, seems to have had much influence in the determination of the cause by the court below. Doubtless he is entitled to recover from the officer *de jure*, Stewart, the compensation to which he is entitled by contract or by law. It will be remembered that he

was the sheriff's deputy when the void order for the removal of that officer was made; Stewart's right to the office was not affected by that order; the appointment of plaintiff was not revoked, and it continued valid during the time he acted as sheriff. The law regards Stewart as the sheriff during all this time, and plaintiff as his deputy. Plaintiff's emoluments must be determined by the contract existing between him and Stewart, either express or implied, or by the statute regulating the compensation of deputy sheriffs, if there be any applicable to this case.

The judgment of the District Court will be reversed and the cause will be remanded for judgment in accord with this opinion.

REVERSED.