# RASMUSSEN v. BOARD OF COUNTY COMMIS-SIONERS OF CARBON COUNTY.

OFFICE AND OFFICER — SALARY — RECOVERY OF SALARY FROM COUNTY BY DE JURE OFFICER.

1.  Payment made by a county to a de facto officer is no defense to an action brought by a de jure officer for the salary of an office to which he has been declared legally entitled from the commencement of the term.

2.  A de jure county officer may recover from the county the salary of the office for the period during which he has been excluded from the office pending an election contest instituted by him against the one declared elected by the board of canvassers; notwithstanding that the salary for the same period has been paid to the de facto officer, and although the de jure officer does not take the oath of office until after judgment in the contest proceedings.

3.  Where, after having been legally declared entitled to the office, and no opposition is made to his taking the office, the de jure officer neglects to qualify by giving a required bond within a reasonable time, although he may have taken the oath of office, he can not recover the salary of the office for the period of such neglect, when the salary has been paid to the de facto officer who necessarily performed the duties of the office during such period.

4.  Where, by reason of illegal votes having been received and counted for him, one receiving a minority of the legal votes cast for county treasurer is declared elected by the canvassing board, given a certificate of election, qualifies, discharges the duties of the office, and receives the salary thereof pending an election contest over the office instituted by the one who received a majority of the legal votes cast, the latter upon being adjudged entitled to the office from the beginning of the term is entitled to receive from the county the salary from the beginning of the term.

5.  Where, pending an election contest for the office of county treasurer, the county board, with knowledge on the part of its individual members of such contest, pays the current salary to the incumbent who is subsequently adjudged not to be

entitled to the office and is ousted therefrom, the successful contestant, upon being installed in office, is entitled to receive from the county the salary from the beginning of the term, he having been declared entitled to the office from that time, although he did not perform the duties of the office pending the contest.

6.  To entitle the de jure officer to the salary from the county where it has been paid to the de facto officer, for the period after judgment declaring the former legally entitled to the office and prior to his qualifying, such officer must qualify within a reasonable time after such judgment.  Where such officer, after judgment entered December 22, 1897, had an opportunity to qualify by furnishing bond early in January following, a failure to do so until February is an unreasonable delay, and he can not recover the salary for the period after judgment and prior to his qualifying.

[Decided April 24, 1899.]

ON reserved questions from the District Court, Carbon County, HON. DAVID H. CRAIG, Judge.

The material facts are stated in the opinion.

*N. E. Corthell*, for the plaintiff.

The judgment in the election contest had the same force and effect as to the result of the election as if it had been so declared by the canvassers.  (L. 1890, Ch. 80, Sec. 161; State v. Johnson, 17 Ark., 407; Carroll v. Siebenthaler, 37 Cal., 195; Swann v. Turner, 23 Miss, 565; Glascock v. Lyons, 20 Ind., 1; Kreitz v. Behrensmeyer (Ill.), 36 N. W., 985; People v. Pease, 27 N. Y., 56; Shannon v. Baker, 31 Ind., 391.)  The right, therefore, of one who holds office by election arises from the fact and at the time of his election.  That is his title.  It dates from the time of his election.  What does a successful candidate acquire by election ?  An office is a " right to exercise a public (or private) employment, and to take the fees and emoluments thereunto belonging." (2 Blackstone, 36.)  The term embraces the ideas of tenure, devotion, emolument, and duties.  (U. S. v. Hart-

well, 6 Wall., 393.)   The salary is an incident to the office, and can not be detached from it.    It is incident to the office and not to the performance of the services.  (Blair v. Marye, 80 Va., 492; Kendall v. Raybauld (Utah), 44 Pac., 1034; People v. Oulton, 28 Cal., 44; People v. Smith, Id., 21; Carroll v. Siebenthaler, 37 Id., 195; People v. Brennan, 30 How. Pr., 417; People v. Tieman, 30 Barb., 193; Fitzsimmons v. Brooklyn, 102 N. Y., 538.) Hence no one but a de jure officer can recover the salary, although the duties might have been performed and the functions thereof exercised.    The lawful title is put in issue whenever such recovery is sought.    (Meagher v. Story, 5 Nev., 245; Carroll v. Siebenthaler, 37 Cal., 195; People v. Brennan, 30 How. Pr., 417; Kimball v. Alcorn,, 45 Miss., 158; Mc Cue v. Wapello, 56 Ia., 698; Dolan v. Mayor, 68 N. Y., 279; Mayor, etc., v. Hays, 25 Ga., 590; People v. Van Nostrand, 46 N.Y., 382.) And it is generally held that the de jure officer may recover from the incumbent the salary paid to him.   (Kreitz v. Behrensmeyer, 36 N. E., 984; People v. Pease, 27 N. Y., 56; Dolan v. Mayor, 68 N. Y., 280; State v. Holmes, 10 So., 172; Wenner v. Smith, 4 Utah, 238.)

The right of the de jure officer can not be taken away or defeated by a payment to an incumbent.  (Board v. Burns, 3 Wyo., 705; Guthrie v. Board, 7 Id., 95; State v. Carr (Ind.), 28 N. E., 88.)   A debtor can not discharge his debt by paying it to third person without the consent of his creditor.  (Pimental v. Marques (Cal.), 42 Pac., 159; Aldritt v. Panton (Mont.), Id., 767.)

The doctrine flows logically from these propositions that the de jure officer may recover the salary from the county, although it has been paid to another who may have actually performed the duties.  (Bastrop v. Hearn (Tex.), 8 S. W., 302; Dorsey v. Smith, 28 Cal., 21; Carroll v. Siebenthaler, 37 Cal., 195; Ward v. Marshall (Cal.), 30 Pac., 1113; State v. Carr (Ind.), 28 N. E., 90; Andrews v. Portland (Me.), 10 Atl., 458; Stadler v. Detroit, 13 Mich., 346; State v. Carr, 3 Mo. App., 6;

Lee v. Mayor (Del.), 40 Atl., 663: Selby v. Portland (Ore.), 12 Pac., 377; Phila. v. Rink (Pa.), 2 Atl. 505; Memphis v. Woodward, 12 Heisk., 499; Williams v. Clayton, 6 Utah, 86; Kendall v. Raybauld, 44 Pac., 1036; Mc Veany v. Mayor, 80 N. Y., 195; Fitzsimmons v. Brooklyn, 102 N. Y., 336.) The question of notice seems to be altogether immaterial, but the fact is shown that the commissioners had notice of the contest.

*F. Chatterton,* for defendant.

It is contended on behalf of defendant that, 1. In the absence of fraud, payment of salary to a de facto officer bars an action by the de jure officer. 2. Disbursing officers are not judicial officers, and may rely upon the apparent title of the de facto officer, and treat him as de jure. 3. The salary of an office is a reward for, grows out of, and is dependent on, the actual rendition of services. 4. An office, in this country, is not held by grant or contract; is not a vested interest, and there is no property right in its prospective emoluments. 5. One entitled to an office is not entitled to the salary thereof for any period prior to his qualification. 6. Recovery can only be had for such period as the plaintiff was actually an incumbent of the office. 7. The defendant, not being a party to the contest proceedings, the individual knowledge of the commissioners, can not charge the defendant with notice to effect liability. 8. Where all allegations of the petition are true, and yet defendant is not liable, the petition will fail to state facts sufficient to constitute a cause of action. As to this last point we cite 1 Ency. L., 517; Bliss Code Pl. 413, 414; Pursel v. Deal, 16 O., 295; Biers v. Dalles, Id., 343; Franklin v. Kirby, 25 Wis., 496.

In this class of cases a distinction is made between those cases where the de facto officer obtained the office by fraud, unlawfully, and as an usurper, and those cases where he came to the office honestly and with color of title. In this case the de facto officer had color of title,

and was not guilty of any fraud.   It would be unjust to require fiscal officers to pay salaries, if they were not held justified in relying on the apparent title of the officer, especially when such title was obtained, as in this case, honestly, without fraud, and by due course of law; and equally unjust to the government, if after its officers have acted honestly it could be required to pay the salary a second time, and to one who had not acted or even offered to act.   The disbursing officer acts ministerially. (Parker v. Dakota, 4 Minn., 59; Dolan v. Mayor, 68 N. Y., 281.)

We therefore urge that the payment to a de facto officer is a good defense to this action, and this seems to be supported by the great weight of authority.   (Dolan v. Mayor, supra; McVeany v. Mayor, 80 N. Y., 185; Terhune v. New York, 88 N. Y., 247; Auditors v. Benoit, 20 Mich., 176; Shaw v. Pima Co. (Ariz.), 18 Pac., 273; Saline Co. v. Anderson, 30 Kan., 298; Smith v. Mayor, 37 N. Y., 518; Connor v. Mayor, 5 N. Y., 285; State v. Milne, 36 Neb., 301; Demarest v. New York, 74 Hun., 517; Demarest v. Mayor, 147 N. Y., 206; Michel v. New Orleans, 32 La. Ann., 1094; McAffee v. Russell, 29 Miss., 84; Wheatly v. Covington, 11 Bush, 18; McManus v. Brooklyn, 25 N. Y. S. R., 939; Gorman v. Boise Co., 1 Ida., 655; State v. Clark, 52 Mo., 508; Westberg v. Kansas, 64 Mo., 493; Steubenville v. Culp, 38 O. St., 18; Scott v. Crump (Mich.), 64 N. W., 1; Newark v. McDonald (N. J.), 32 Atl., 384; Fuller v. Roberts (S. D.), 68 N. W., 308; Chandler v. Hughes Co. (S. D.), 67 Id., 946.)

The salary is not an incident to the office alone, but under our statutes is a reward for, grows out of, and is dependent upon, actual rendition of services.   (L., 1895, c. 76; State v. Barnes, 24 Fla., 29; 38 O. St., 18; 52 Mo., 508, and other cases cited above.)   One holding a certificate of election, from the proper authorities, is entitled to the possession of the office, although his election may be questioned.   (People v. Head, 25 Ill., 325; Peo-

ple v. River, 27 Ill., 242.) It has been held that a de facto officer may recover upon the principle that salary is a reward for the rendition of services. (Envin v. Jersey City, 37 Atl., 732; Stuhr v. Curran, 44 N. J. L., 181; Queen v. Mayor, 12 Ad. & El., 702.) One, although with a right to do so, who has not assumed an office is not an incumbent in any sense. (King v. Swyer, 10 B. & C., 486.) Plaintiff can not recover for the time between judgment and qualification. (Chandler v. Hughes, 67 N. W., 946; Albaugh v. State (Ind.), 44 N. E., 355.) Defendant had a right to deal with Baker as the de jure officer. (State v. Durkee, 12 Kan., 308; Leach v. Cassidy, 23 Ind., 449; Auditors v. Benoit, 20 Mich., 176; State v. Williams, 5 Wis., 308; Venable v. Card, 2 Head, 582; Saline Co. v. Anderson, 20 Kan., 298.) The judgment in the contest only establishes the right of the successful party to a certificate of election as evidence of title, but the evidence of title does not install him in the office and give him a right to the salary. Before he can take the office or have a right to the salary, he must take and file an oath and furnish the requisite bond.

*N. E. Corthell*, for plaintiff, in reply.

Fraud is imputed to the acts of the board, at least in so far as payments were made after notice that the incumbent had been adjudged not entitled to the office. In view of the contest, and the knowledge thereof on the part of the disbursing officers, there was no "apparent title" in the incumbent to be relied on. They were not ignorant of the facts, and ignorance of the law furnishes no excuse. (Broome's Leg. Maxims; 24 Fed. C., 829; 98 U. S., 145; 1 Pet., 15.) While expressions in the authorities are abundant that salary is dependent upon actual rendition of services, the proposition must be taken with this qualification, that a readiness and willingness to perform may stand for actual performance, where the employer prevents performance. It was not required of plaintiff that he should take the oath previous to judg-

ment in his favor; the law does not require the doing of a vain or useless thing.

KNIGHT, JUSTICE.

At the general election, held in 1896, plaintiff was candidate for the office of county treasurer of Carbon County. The returns of the election as canvassed gave him twenty-seven votes less than Fred M. Baker, the opposing candidate, and a certificate of election was issued to said Baker, under which he duly qualified and assumed the duties of said office. Plaintiff Rasmussen instituted proceedings to contest the election of Baker within the time and as pro vided by law, and his said action came regularly to this court, and certain questions deemed material and important were determined here Nov. 15, 1897 (50 Pac., 819; 7 Wyo., 117), and thereafter on Dec. 22, 1897, upon the questions so determined the district court rendered judgment for this plaintiff Rasmussen, the same being a judgment of ouster in his favor and against said Baker.

The contention in that action was that certain naturalized citizens (and a sufficient number to produce the result found) who were unable to read the constitution of the State in the English language, were permitted to vote upon proof of their ability to read the same in their native language correctly translated. After the judgment of the district court on Dec. 22, 1897, said plaintiff, without opposition, proceeded to qualify as county treasurer, and on Dec. 23, 1897, took the oath of office required, and presented his bond, which was thereafter, on Jan. 6, 1898, by the board of county commissioners, rejected, and as no exception was taken, nor objection made, at the time, or since, to this act of the board, it is to be assumed that said action was as required by law.

On Feb. 1, 1898, plaintiff presented a new bond which was duly approved, and plaintiff assumed and discharged the duties of said office from thence on to the end of the term, and received the salary therefor. This action is brought to recover from the county the salary of said

office from Jan. 4, 1897, to Feb. 1, 1898, the period of time that said Fred M. Baker occupied the same and performed the duties thereof by virtue of the certificate of election as aforesaid, and for which said services said Fred M. Baker had been fully paid by the county of Carbon.

This action, as appears from the foregoing statement, is one where a de jure officer seeks to recover from a county the salary of an office where the services incident to said office had been performed by a de facto officer, and fully paid for by the county, and such payment is pleaded as a defense, as well as the admitted fact, that the said de jure officer failed to take the oath of office until after judgment had been rendered declaring plaintiff to be such de jure officer; and that said plaintiff failed to present a good and sufficient bond, after filing his oath of office, for more than one month.

It will be observed that this action is absolutely free from fraud (and we call attention to that fact now once for all; as all of the well-considered cases bearing upon this subject admit that in a case such as we have here, a different rule should be applied than where fraud is claimed and found).

Among the long list of authorities, to which we have been directed by the briefs herein, as well as a large number that we have found and examined, there is a marked distinction between cases like this, where recovery is sought from the municipality or county, after payment has been made to a de facto officer, and where recovery is sought from the de facto officer for all or a part of the money so received. It is not necessary for us to discuss as to what constitutes an officer de facto or one de jure, because the parties here come within the best description of those officers that we have found.

The six questions certified to us from the district court are as follows:

1. Where, by reason of illegal votes having been received and counted for him, one who receives a minority of the legal votes cast for county treasurer is, by the

county canvassing board, declared elected, and receives his certificate of election and qualifies, discharges the duties and receives the salary of the office pending a contest against him by the candidate who receives a majority of the legal votes cast, is the latter, upon being adjudged entitled to the office from the beginning of the term entitled also to receive from the county the salary from the beginning of the term for which he was elected?

2. Where, pending an election contest for the office of county treasurer, the several members of the board of the county commissioners, with individual knowledge, but not by reason of any formal notice to them, knew of the pendency of such contest, pays the current salary of the office to the incumbent, who is subsequently adjudged not to be entitled to the office and is ousted therefrom, is the successful contestant, upon being installed in office, entitled to receive from the county the salary of such office from the beginning of the term for which he was elected, he not having performed any of the duties of said office?

3. Where, pending an election contest for the office of county treasurer, the several members of the board of the county commissioners, with the individual knowledge of the facts upon which the legality of certain votes, cast for the incumbent in the number determinative of the right to the office, are thereafter declared to be illegal, and the board under these circumstances pays the current salary of the office to such incumbent, prior to the judgment in said contest, who is subsequently adjudged not to be entitled to the office, and is ousted therefrom because of such illegal votes, is the successful contestant, upon being installed in office, entitled to receive from the county the salary of such office from the beginning of the term for which he was elected?

4. Where, in an election contest case pending for the possession of the office of county treasurer, certain questions of law determinative of the merits of the case, are reserved and certified to the supreme court, and the

answers and decision of said court are in favor of the contestant, and notice of such decision is given to the board of the county commissioners, which thereafter pays to the contestee and the incumbent of such office the current salary of such office, is the successful contestant, upon being installed in office, entitled to receive from the county the salary of such office for the time covered by the payment made subsequent to notice aforesaid?

5. Where the board of county commissioners, subsequent to judgment in favor of the contestant in an election contest case for the possession of the office of county treasurer, and notice to it of such judgment, pays to the contestee and incumbent of such office prior to the approval of the contestant's official bond, the current salary of the office, is the successful contestant, upon being installed in office, entitled to receive from the county the salary of such office for the period covered by the payment made after notice of judgment as aforesaid?

6. Is the payment of the salary of the office of county treasurer, by the board of the county commissioners, to the incumbent of such office, pending an election contest against him, for the possession of such office, a sufficient defense to an action by the successful contestant after being installed in office to recover from the county the salary of such office for the period covered by such payments, he not having performed any of the duties of said office?

In answer to the first question we quote with approval, among others, from The State v. Johnson, 17 Ark., 413: "To determine the result of the election * * * we have but to ascertain who received the majority of the votes of the electors possessing the qualifications prescribed by those acts of the Legislature to which we have before herein referred. The poll books of an election serve as conclusive evidence to the judges who preside at the polls, to enable them to determine the result, as it is from these books alone that such judges can ascertain that fact. After they have been thus used, and are deposited and filed away as the new law requires, they are simply memorials of what

they contain, and intrinsically as a medium of evidence of the qualification of the electors, they are only prima facie of that fact.    The proclamation and certificate of the judges who presided over the election * * *, declaring and making known that the appellee had received a majority of the electoral votes polled on that day for the office of mayor, were certainly not more potent than the original books from which the fact proclaimed and certified to was derived.    The office of the proclamation was to inform the parties concerned of the present result, and that of the certificate and the abstract they were required to make out and send to the governor, was to furnish him with evidence prima facie or conclusive; as to him, it makes no difference whereon he might proceed to issue the commission to the person appearing to him to have been elected.    But at last, after all this has been done and the party thus commissioned, he derives his authority as an officer, not from the proclamation of the judges, not from the certificates of election, not from those abstracts made out for the governor, and not from the commission; but from the free choice and election of the people, not the people in the popular sense of those words, but from the people who were competent and qualified electors, when the votes were polled and the election held.    (Citing authorities.)''

In Vol. 8, American and English Ency. of Law, at page 808, et seq., will be found a discussion of the subjects embraced in this action, and authorities more generally cited than in any other work we have examined.    Leaving out of consideration those where fraud is a factor, and those where the proceeding is against a de facto officer, and those where the consideration of the manner of procedure are controlling elements, we are of the opinion expressed by the court in Stuhr v. Curran, 44, N. J., L. 181:    '' A critical examination of the adjudged cases will show that the question involved is not so trammeled by authority that this court is precluded from adopting the rule which best accords with sound reason and a wise pub-

lic policy." In this case (Stuhr v. Curran) the court holds the right of the de facto officer to retain the fees of the office received by him while in the possession of the office, as against the de jure officer who sues to recover the same.

The case of Dolan v. Mayor, 68 N. Y., 274, holds that disbursing officers charged with the duty of paying official salaries have, in the exercise of that duty, a right to rely upon the apparent title of an officer de facto and to treat him as an officer de jure, without inquiring whether another has the better right, and that the officer de jure, when he recovers possession of the office by quo warranto, is entitled to receive from the disbursing officer so much of the salary as at that time has not been paid to the intruder.

A leading case, and often referred to as such, is Benoit v. Auditors of Wayne County, 20 Mich., 176. Benoit and one Miller were candidates for the office of county treasurer. Miller was declared elected by the canvassers, and was commissioned and entered upon the duties of the office January 1, 1867, and continued to perform such duties until November, when he was ousted by the judgment of the supreme court, in an action brought by Benoit, who then took the office and continued to serve the remainder of the term. In making final settlement, Benoit claimed the salary for the full term, including that portion while Miller performed the duties and received payment from the county for the same. And Benoit in his final settlement withheld a sum of money equal to the amount paid by the county to Miller. The board of county auditors refused to allow Benoit's claim, and brought action on his bond to recover the amount so withheld. The circuit court gave judgment for the county, and Benoit appealed. The supreme court says among other things, "It seems very well settled that as against the person who has kept him out of office by the intrusion an action will lie for the injury. * * * Our statutes has recognized the right to this redress." And the court decides

that recovery can not be had against the county.   In that case Justice Cooley filed a dissenting opinion, in which he held that Miller was not entitled to receive payment from the county, being a de facto officer, and that while a de facto officer acting as such can legally discharge the duties of the office and bind private individuals, he can not sue and recover fees or salary and thereby deprive the de jure officer of the same.

The case of People v. Smith, 28 Cal., 21, is referred to by Justice Cooley as follows:   "This decision appears to' me to be sustainable on the soundest reasons of public policy.   * * *   Public policy requires that municipal officers should be allowed to sanction or recognize the intrusion only so far as may be necessary to give the public the full benefit of protection, which the rule regarding the acts of officers de facto was designed to afford."   Justice Cooley contends, in that opinion, that notwithstanding the statute of Michigan which gave Benoit the right to recover from Miller the salary he had collected as such de facto officer, Benoit should have the right to recover that amount from the county, and not be forced to look to Miller, who might be insolvent, and that payment to Miller was unwarranted upon legal principles, which he presents and discusses learnedly, and his opinion in this case is many times referred to with approval.

It is interesting to follow that case and cause of action in the supreme court as reported, and it is to be found next in 24 Mich., 458, People on Relation of Benoit v. Miller, a proceeding in quo warranto.   Judgment for damages is opposed because the value of Miller's services were not allowed, and because Benoit's earnings while kept out of the office were not deducted from salary of the office during said time.   In this decision the entire court, including Justice Cooley, concur, and as several of the same questions are now before us, we quote:  "It is claimed that Miller having been in office during the preceding term was bound to hold over until his successor was elected and qualified, and that as Benoit did not

qualify until after the judgment of ouster, Miller's right to the salary and his duty to hold over continued. It would be a sufficient answer to this to refer to the judgment already given, which is conclusive against any pretense of a lawful holding over. That would have been a complete defense to the original action, if there had been any foundation for the claim. But there is no foundation whatever for any such pretext. The defense, in this case, rested upon a new election, and a title thereby certified by the proper authority to be in Miller, and his taking steps to qualify. That action precluded Benoit from qualifying, and his attempt to do so would probably have been nugatory. He could not be compelled to tender his qualifying papers to officers who had already acted, or who had no evidence of his rights. The law expressly allows an officer, ousted by another, to qualify after he obtains judgment in his favor. We do not find any reason or authority for holding that the good faith of the intruder can make any difference touching the pecuniary value of the office to the person kept out. * * * In such offices as the one now in question, there are very few, if any, duties which can not be performed by deputy. There are duties for which no specific payment is made, and which are compensated by the salary; and there are duties which are paid for by fees or other perquisites only earned by performing those specific duties. There may be reason for deducting from any official earnings the actual cost of obtaining them, which would have been entailed on any person who might have held the office. It is difficult to see how any such question could arise here, because all that expense is paid by the county. * * * The official salary is not made dependent on the amount of work actually done by the treasurer and does not require his personal services to any considerable extent. He would not forfeit it by leaving the bulk, or possibly the whole, of his substantial duties to the deputy and clerks. He would not necessarily lose it even by misconduct unless removed from office. It is given, no doubt, on the theory

that a treasurer is worth so much to the county; but not upon any specific apportionment whereby the value of his time and sagacity, and his character, and his business knowledge, can be determined separately.    But whatever may be the basis of the allowance, it is fixed upon the theory that it will usually be paid to a person who has been selected by the electors, or by the appointing power, as a desirable incumbent.    The amount of personal labor done by the officer can form but a small part of his claim to the salary in such an office as this, and he may be much less competent than his deputies.    But whether it be or be not important that this personal labor should be expended, —and in some offices it must be, — the inquiry here is how far it can be regarded as proper to make the person who has been kept out of the office pay for the service of the wrong doer.    They are not services done for him personally.    They are not services done at his request or by his consent.    They are services which it must be assumed he would have been willing to perform himself, if not prevented by the intruder.    No rule of law permits one to make another his debtor in spite of his protest and against his will.  * * *  The money which Miller received from the county was paid to him because he was an officer de facto, and as the perquisites of office, and not for private services independent of official character.    Having received it as official property he must restore it as such.    An intermeddler might as well charge a commission on rents collected of tenants without authority from the landlord, as an intruder into office claim pay for his personal services from the legal officer whom he kept out.    Miller's services were not rendered with any design of benefiting Benoit.''

Other courts of high authority have announced the same conclusion, that where payment has been made to an officer de facto, and before judgment of ouster, the de jure officer can not recover from the city or county, and some courts have gone so far as to hold that this rule applies even where it is known that the de facto officer is

insolvent and his title to the office is being contested. Shaw v. County of Pina, Ariz., 18 Pac., 273; State v. Clark, 52 Mo., 508; Smith v. Mayor, 37 N. Y., 518; Westberg v. City of Kansas, 64 Mo., 493; Mc Veany v. Mayor, 80 N. Y., 185; Dolan v. Mayor, 68 N. Y., 274; Stubenville v. Culp, 38 Ohio St., 23; Shannon v. Portsmouth, 58 N. H., 183; Chandler v. Hughes, 9 So. Dak., 28; Fuller v. Roberts Co., So. Dak., 219; Greely Co. v. Miln, 36 Neb., 301; and other cases.   All through the authorities cited, and those we shall hereafter refer to, it is held that an officer de facto as such *only* can not in any form of action recover from the county or city the fees of an office, although he may have performed the duties of the office.   The authorities upon this proposition are more numerous than upon any other in point, and the courts holding otherwise are so far in the minority that it is not necessary to refer to them.   There is no such office anywhere as a de facto office.   It is the officer and not the office to which the term de facto is applied.   Norton v. Selby Co., 118 U. S., 442.

One of the most condensed and instructive discussions we found, covering as it seems to us all of the contentions here in point, is Mr. Freeman's note to the case of Andrews v. Portland, 10 Am. St., 280, from which we quote, "The cases involving the right of an officer de jure to his salary, when the office is in possession of an officer de facto, are incapable of reconciliation. * * * These decisions have been placed partly upon the ground that the officer de jure had no property rights in the office, and partly upon the ground that his right to the salary and emoluments of his office was not dependent upon the office, but upon the actual performance of his services as a public official; and further, that while there was an officer de facto in actual possession of the office, the disbursing officers were not entitled to consider the question of who ought to be in such possession, nor to question the title in any other way than by a proceeding in quo warranto, it is believed that none of these grounds

are well taken, and most courts which yet maintain the general rule have substantially admitted in subsequent cases that the ground for it did not in fact exist.  In the first place it is now well settled that an officer de facto is not entitled to the salary of the office, and that although he may faithfully discharge its duties, he can not maintain an action against the city or county for the compensation to which he would be entitled if he were an officer de jure; Mc Cue v. Wappello County, 56 Iowa, 698; Matthews v. Supervisors of Copiah County, 53 Miss., 715; Dolan v. Mayor, 68 N. Y., 274.  In the next place, if he has fairly received the emoluments of the office, he has no right whatever to retain them, and he may be compelled to account therefor to the officer de jure, in any appropriate form of action.  Douglas v. State, 31 Ind., 429; Lawler v. Alton, 8 Ind., 160; Mayfield v. Moore, 53 Ill., 428; Auditors of Wayne County v. Benoit, 20 Mich., 176; Rull v. Tait, 38 Kan., 765; Beer v. Gorrell, 30 W. Va., 95; Glasscock v. Lyons, 20 Ind., 1; People v. Miller, 24 Mich., 458; Hunter v. Chandler, 45 Mo., 452; United States v. Addison, 6 Wall, 291; State v. Tate, 74 N. C., 131.  If a judgment of ouster has been entered against an officer de facto, and salary is thereafter paid to him, the officer de jure may maintain an action therefor against the city or county, notwithstanding such payment.  Mc Veany v. Mayor of New York, 80 N. Y., 185.  If no part of the salary has been paid during the incumbency of an officer de facto, the officer de jure, although he performed none of the duties of the office, may maintain an action against the city and county for the salary and emoluments thereof.  Dolan v. Mayor, 68 N. Y., 274; Comstock v. Grand Rapids, 40 Mich., 397."

" If it is true, as must be admitted, that an officer de jure, although he performs none of the duties of the office, may maintain an action against the officer de facto for fees or salary actually collected by him, or against the city or county, for salary accruing during the incumbency

of the officer de facto, but not in fact paid to him, then it must be that the officer de jure has some property rights in the emoluments of the office, and that these rights are not dependent upon his performance of its duties, but upon his title to the office, and it is difficult to understand how the wrongful payment of his salary to a person not entitled to receive it can, in any respect, impair his right to recover it, as though no payment whatever had been made. Hence the principal case and cases in California and Tennessee maintain the doctrine against the weight of authority, but in harmony, we think, with judicial principles that the payment of the salary to an officer de facto in no way impairs the right of the officer de jure to recover such salary from the city, county, or other public body charged with the duty of making its payment. Memphis v. Woodward, 12 Heisk, 499; Savage v. Pickard, 14 Lea, 46; Dorsey v. Smith, 28 Cal., 21; Carroll v. Siebenthaler, 37 Id., 193. The supreme court of Oregon has, however, decided that in no event can an officer de jure maintain an action to recover his salary while the office is in possession of an officer de facto whose right to the office has not been fully determined by an action brought expressly for that purpose. Selby v. Portland, 14 Or., 243. And in New Jersey an officer de jure can not recover from an officer de facto the emoluments of office received by the latter while in discharge of its duties in good faith, and in the belief that he was entitled to the office and its emoluments. Stuhr v. Curran, 44 N. J. L., 181.''

In addition to the cases cited by Mr. Freeman, supra, that support the doctrine that the payment of the salary to an officer de facto in no way impairs the right of the officer de jure to recover such salary from the city, county, or other public body charged with the duty of making its payment, we find that several States since that time, and some prior thereto, have announced the same doctrine. In Andrews v. City of Portland, 79 Me., 484, the court says: ''A de facto officer has no legal right to the emolu-

ments of the office, the duties of which he performs under color of an appointment, but without legal title. He can not maintain an action for the salary. His action puts in issue his legal title to the office, and he can not recover by showing merely that he was an officer de facto. (Citing a large number of authorities.) Hence it was held, in Nichols v. Mc Lean, supra, after a careful examination of authorities, that the de jure officer who was prevented from performing the duties of the office by an illegal removal, might recover of the de facto officer who performed the duties under color of an appointment, the salary which he had drawn while performing them. This result can be reached only on the ground that the de facto officer has no rights to the emoluments of the office. But it is contended by the learned counsel for the defendant that, admitting the foregoing propositions to be well founded, still Ducelle was exercising the duties of the office in fact, under color of title upon which the defendant might well act, before his legal right was decided, and be legally protected in paying the salary to him. We think this contention, when tested by the facts of the case and well established legal principles, is unsupported by logic or sound reason. The city had full notice of the plaintiff's claim as the legal officer, and that the legal title to the office was in litigation. It must be held that it knew that the legal title to the office would draw with it the salary. May it assume to determine the question of legal right between the parties before decided by the court, pay to the one having no legal title, and then successfully set up its action in defense of the claim of the one having the legal right? May A, who holds a fund claimed by B and C, with full notice of the claim of each, elect to determine between them, and pay to B, who has a prima facie right, and set the payment as a defense to the claim of C, who has the legal title? It is perfectly well settled that he can not. If he elects, it is at his peril. He is not required to do so. He may await an action at law and then bring both claimants into court by bill of interpleader to

litigate their title; or he may bring the bill at once without waiting for the commencement of an action at law. Here the city was in no peril. It might have refused to pay to either till the title to the office was determined; or by bill of interpleader, it might have brought the parties into court to litigate their title to the salary. * * * We are aware that courts of high authority have sustained the doctrine contended for by the defendant. The doctrine of the court of appeals of New York now seems to be that a payment of the salary by the city to the de facto, before the title to the office is determined, is a good defense to a claim by the legal officer; but that the legal officer may recover all of the salary not, in fact, paid before the right to the office is determined, although it accrued before the determination of the title. We do not find that the court has noticed the element of notice to the city by the legal officer of his claim before payment. Courts in some other States have followed the New York doctrine. Courts of high authority in several of the States have held that the officer, having a legal title to the office, may recover of the city the salary, notwithstanding it has been paid to the officer de facto. We have not attempted to analyze the cases and to try to reconcile them. They appear irreconcilable. Our court is uncommitted, and we have come to the conclusion which seems to us best supported by reason and sound legal principles." And in that case the judgment was for the de jure officer, allowing him to recover, notwithstanding the fact that the city had already paid a de facto officer.

Pennsylvania seems to have settled the question in one of the shortest opinions found, in the case of City of Philadelphia v. Rink, 2 Atl., 505; and it is quite refreshing to find a court that in view of the wide difference in the opinions of the courts upon the question, and we find that they were called to its attention, can dispose of the matter so briefly and apparently with entire satisfaction as to the correctness of the result announced. This case is where Rink and Barr were candidates for election to the

office of magistrate of the city.    The judges of election
certified that Barr had received a majority of fifteen votes;
this was in February, 1880.  Rink contested; the court
found that he and not Barr was elected.    Supreme court
affirmed, and on April 13, 1883, Rink was commissioned
and took the office, Barr took the oath of office and gave
bond, March 30, 1880, was commissioned by the gov-
ernor, and acted as magistrate from the first Monday of
April, 1880, to April 17, 1883, receiving the salary of a
magistrate from the first Monday of April, 1880, to the
first Monday of January, 1883.    Rink brought an action
against the city of Philadelphia to recover the salary for the
time that Barr had held the office and been paid the salary,
and was given judgment for $10,297.50 and interest from
April 15, 1884.    In the opinion of the trial court, Ludlow
P. J., said: "The salary is annexed to the office of a
magistrate, and to the person who holds the title, and not
to a mere incumbent who has been legally declared to
have been an intruder, and therefore only a de facto offi-
cer.    Dorsey v. Smith, 28 Cal., 21; Douglas v. State, 31
Ind., 429.    If there ever was a case in which 'prevention
is equivalent to performance' this is the case."    From
this judgment the city appealed, and one of the defenses
as shown by the case was that the services for which
judgment had been rendered had been paid for to the de
facto officer, and we will quote the opinion in full on
appeal.

"In the contest between Barr and the defendant in
error, the court below decreed that, at the election held
on the third Tuesday of February, 1880, the latter
received the highest number of votes, and was duly and
legally elected a magistrate in and for said city of Phila-
delphia.    That decree was affirmed in this court.    There-
upon he was duly commissioned by the governor to be a
magistrate of said city, and giving and granting unto him
full right and title, inter alia, 'to receive and to enjoy all
and singular the emoluments to a magistrate lawfully
belonging, or in any wise appertaining, by virtue of the

constitution and laws of the commonwealth, to have and to hold this commission, and the office hereby granted unto you, for the term of five years, to be computed from the first Monday of April, 1880.' That decree established the right of the defendant in error to the office, and all the emoluments thereof, from the time his term legally commenced. It is no answer to say that he did not take the oath or give the bond. He was denied the privilege of doing either. If he had gone through the form of then executing the papers, no effect could have been given to them prior to the decree in his favor. He was not kept out of the office by reason of any such omission, but by reason of the fact that it had been declared that Barr had received a larger number of votes, and the latter was actually occupying the office. The court correctly entered judgment in favor of the defendant in error on the reserved points. Judgment affirmed.''

In Mc Cue v. The County of Wapello, 56 Iowa, 698, the court says: '' The district court found that plaintiff was, during the time the services in question were rendered, sheriff de facto, acting in good faith under a claim of right to the office, and is therefore entitled to recover the compensation provided by law for such services. Here is the decisive error of the learned judge of the district court. The doctrines of the law applicable to officers de facto do not extend so far as to confer upon them all the rights and protection to which an officer de jure is entitled. The doctrines operate only for the protection of the public. They can not be invoked to give him the emoluments of the office as against the officer de jure. Upon this very point we used the following language in Mc Cue v. The Circuit Court of Wapello County, 51 Iowa, 60 (67): 'It will be remembered that one exercising the power of an office without lawful authority is regarded as an officer de facto, not for his own protection or advantage, but for the protection of the public and those who are doing business with him. When his right to the office is to be determined, he can not be declared an

officer de jure on the ground that he has been an officer
de facto.'   We may add that the right to the possession
of an office carries with it the right to emoluments per-
taining to the place.   When an officer seeks to recover
these emoluments, he must show his right to the possession
of the office.   The rule is based upon the ground that the
officer de jure, who has been ousted from his place by an
intruder, has a property interest in the emoluments of the
office, of which he can not be deprived by one having no
title thereto.   This property right demands protection, and
the officer de facto can not recover emoluments to which
the officer de jure is entitled.   No such right intervenes
when the acts of a de facto officer done in the discharge
of the duties of the office are considered.   The rights and
protection of the public and all persons transacting bus-
iness with the officer demand that such right be held valid.
But when the question involving the emoluments of the
office are considered, the rights of the officer de jure for-
bid that the intruder be regarded as the officer.  * * *  The
court below found that the plaintiff held the office under
a claim of right and in good faith, and that he was not a
mere intruder.   The good faith and claim of right of an
officer de facto can not affect the rights of an officer de
jure to emoluments of the office, nor will these things de-
prive the incumbent of the character of an intruder.   Good
faith and claim of right are usually, if not always, exer-
cised by the de facto officers; if they be absent, he is
criminally liable.   Code Secs. 3962–3.   The officer de
facto, when the rights of the de jure officer are considered,
must be regarded as intruder even-though he claims the
office in good faith.   This conclusion is supported by the
authorities just cited.   We reach the very satisfactory
conclusion that the plaintiff is not entitled, as an officer
de facto, to recover the emoluments of the office; that
Stewart, the officer de jure, is entitled to all of them, and
that defendant is not liable in this action.''   In the above
case the de facto officer was acting as sheriff of the county,
and this action was brought not only to recover the fees

of the office during the time he was acting as such de facto
officer, but also to recover money actually expended in the
discharge of the duties of the office, and the court denied
his right to recover either from the county, but says:

"Doubtless he is entitled to recover from the officer de
jure, Stewart, the compensation to which he is entitled by
contract or by law."

The case of Dorsey v. Smith, County Auditor, 28 Cal.,
21, is one often referred to in the authorities, and from it
we quote, "The salary annexed to a public office is inci-
dent to the title to the office, and not to its occupation
and exercise. (The People ex rel., Morton v. Tieman, 8
Abbott's Practice Reports, 359.) In the case cited the
court said: "The salary and fees are incident to the title,
and not to the usurpation and colorable possession of an
office. An officer de facto may be protected in the per-
formance of acts done in good faith in the discharge of
the duties of an office under color of right, and third per-
sons will not be permitted to question the validity of his
acts by impeaching his title to the office. Public interests
require that acts of public officers, who are such de facto,
should be respected and held valid as to third persons who
have an interest in them, and as concerns the public, in
order to prevent a failure of justice. (2 Kent's Com.,
295.) But it does not follow that a right can be asserted
and enforced on behalf of one who acts merely under color
of office, without legal authority, as if he were an officer
de jure. When an individual claims by action the office,
or the incidents to the office, he can only recover upon
proof of title. Possession under color of right may well
serve as a shield for defense, but can not, as against the
public, be converted into a weapon of attack to secure the
fruits of the usurpation and the incidents to the office."
And in several cases since the one referred to, California
has maintained the same doctrine. Burke v. Edgar, 67
Cal., 182; People v. Potter, 63 Cal., 127; Ward v.
Marshall, 96 Cal., 155.

In the case of People v. Brennan, 30 Howard, Pr.,
417, Justice Barnard uses the following language: "These

commissioners were not de facto officers, and the comptroller could have defended himself from payment to the de facto officers, if they were so, by denying their title to the office; but finally assuming these commissioners to have been de facto officers, and that defendant would be protected in his payment to them as against the city, what has this to do with the relator's claim? He is the de jure officer. He alone is entitled to the salary. He has done nothing to destroy his right. The money for him was by the city paid into its treasury. He seeks it from the treasury, and not from the comptroller. It is no defense to his claim for the comptroller to say he has made a mistake, and has paid it to the wrong person.''

In State v. Carr, 129 Ind., 44, the court says: "The legal officers are entitled to their salaries, and money appropriated for conducting a department of state, or a public institution, should be drawn by the officer legally entitled to receive it, and not by any certain person, regardless of whether he has been legally elected, or is in possession of the office or not; and it is not within the province of the Legislature to declare in an appropriation bill who are, or who are not, the legally elected officers of any department. They probably may provide against the paying out of the money to any person other than the legally qualified and acting officer, or officers, and subject the officer to a penalty for paying the same to any other than such officer or officers; but it can not adjudicate as to who are the legal officers, and provide that payment shall be made to them and no other. The conclusion we have reached is well supported by the most recent and well-reasoned cases, although there is some irreconcilable conflict in the authorities, particularly in the earlier cases.''

That court quotes at considerable length and with approval from Andrews v. City of Portland, supra, and also from Mr. Freeman's note, supra, and also from Justice Cooley's dissenting opinion in Benoit v. Auditors of Wayne County, supra.

Where an election is contested, the requirement to qualify within a prescribed time does not apply until the

termination of the contest. Pearson v. Wilson, 57 Miss., 848; Farwell v. Adams, 112 Ill., 57; Benoit v. Miller, supra.

Believing that we have clearly shown that a discussion of each case would prove almost interminable, and that we have given some of the best-considered cases on each side of the question, we are of the opinion that payment made to a de facto officer is no defense to an action brought by a de jure officer, for the salary of an office to which he has been legally declared entitled from the commencement of the term, as in this case. We find one exception to this rule as stated, and that is where, as in this case, after having been legally declared entitled to the office, and no opposition is made to the de jure officer, and he neglects to qualify by giving bond, although he takes the oath of office, and the office for that period is necessarily filled by a de facto officer, who has been paid for such services, the officer de jure can not recover salary.

Answering the questions submitted for our decision, therefore, we say:

To the first question. We answer in the affirmative, with the exception hereinafter stated. And we give the same answer to questions two, three, and four. To the fifth question. We answer, that payment made by the county for services rendered by the incumbent, the same being the salary of the office for the period, after judgment in favor of the contestant up to the time the contestant filed his official bond, and the same was approved, is a good defense to this action for the salary for that period, and that the contestant is not entitled to the salary of the office for that time. The contestant should have filed his bond within a reasonable time after the final determination of the contest. It appears that there was an opportunity for him to have presented a good and sufficient bond early in January. He was not prevented from so doing by the incumbent or by the board. He could not take his office until he had done so. Upon the principle of the adjudi-

cated cases he should not be held entitled to the salary for the period when by his own act and omission he was not entitled to the office.    Such reasonable time for the filing of the bond must be determined upon the facts of each case.    It is therefore our opinion that from the time of judgment of ouster until February 1 thereafter this plaintiff is not entitled to recover.    With the exception last aforesaid, the sixth question is answered in the negative.

POTTER, C. J., and CORN, J., concur.

