(No. 11265.—Judgment affirmed.)

THE PEOPLE *ex rel.* Clarence D. Blachly, Defendant in Error, *vs.* PERCIVAL B. COFFIN *et al.* Plaintiffs in Error.

*Opinion filed June 21, 1917—Rehearing denied October 3, 1917.*

1. ORDINANCES—*municipal ordinances must be specially pleaded.* Courts do not take judicial notice of municipal ordinances but they must be specially pleaded, and a petition for *mandamus* to compel the re-instatement of the petitioner to an office created by ordinance must set forth the ordinance for the purpose of showing the existence of the office.

2. SAME—*allegation that ordinance was passed includes every requirement for its passage.* It is not necessary, in alleging that an ordinance was passed, to say that it was passed by a majority vote of all the members present voting by yeas and nays entered on the journal, as the allegation that the ordinance was passed includes every requirement necessary to its legal passage.

3. SAME—*when ordinance creates an office at the time it goes into. effect.* An ordinance creating an executive department to be known as the department of public welfare, in which is created a bureau to be known as the bureau of social surveys, the chief officer of which "shall be known as the superintendent of the bureau of social surveys," does not leave such office to be provided for or prescribed in the future by the council but the office is created by the ordinance itself.

4. CIVIL SERVICE—*the day of appointment is included in the six months' probation period.* The rule that where an act is to be done within a particular time after a specified day the specified day is excluded in computing the time and the day upon which the act is to be performed is included does not apply in computing the six months' probation period for appointees under the City Civil Service act, and in such case the day on which the appointment is made is included.

5. FEES AND SALARIES—*de jure officer may recover from municipality the salary drawn by a de facto officer.* The legal right to an office carries with it the right to the salary, which is incident to the title to the office and not to its occupation, and where a *de jure* officer of a municipality has been wrongfully deprived of his office he may maintain an action of *mandamus* to compel the municipality to re-instate him and pay him the salary even though it has been paid to a *de facto* officer who has performed the duties of the office.

279 – 26

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

SAMUEL A. ETTELSON, Corporation Counsel, (ROY S. GASKILL, of counsel,) for plaintiffs in error.

FRANCIS X. BUSCH, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Clarence D. Blachly filed a petition in the circuit court of Cook county against the civil service commissioners, the commissioner of public welfare of the city of Chicago, the city treasurer and the city comptroller, to compel the re-instatement of the petitioner in the office of superintendent of the bureau of social surveys in the department of public welfare and the payment of his salary from the date of his removal from office to the time of his re-instatement. A general demurrer to the petition was overruled, and the respondents electing to stand by their demurrer, a judgment was rendered awarding the writ of *mandamus* in accordance with the prayer of the petition. The Appellate Court having affirmed the judgment, a writ of *certiorari* was awarded to bring the record here for review.

The petition, after alleging the adoption of the Civil Service act by the city of Chicago and the appointment of the commissioners, avers that on March 23, 1914, the city council passed a certain ordinance establishing a department of the city government to be known as the department of public welfare, in the following words:

"*Be it ordained by the city council of the city of Chicago:*

"Section 1. There is hereby established an executive department of the city of Chicago which shall be known as the department of public welfare, and which shall include a

commissioner of public welfare and such assistants and employees as the city council, from time to time, may by ordinance provide.

"Sec. 2. There is hereby created the office of commissioner of public welfare. The commissioner of public welfare shall be appointed by the mayor, by and with the advice and consent of the city council. He shall have charge of the general management and control of all matters and activities pertaining to said department, and shall appoint, according to law, all subordinate officers, assistants and other employees. The salary of said commissioner of public welfare is hereby fixed at ....... per annum.

"Sec. 3. There is hereby created a bureau of the department of public welfare which shall be known as the bureau of employment, and which shall operate the municipal lodging house for men and the municipal lodging house for women, and which shall perform such duties in the collection of information relative to working conditions, wages, hours of labor and unemployment in the city of Chicago, and in the practical relief of unemployment, as may be required by the said commissioner of public welfare. The chief officer of said bureau of employment shall be known as the superintendent of the bureau of employment.

"Sec. 4. There is hereby created a bureau of the department of public welfare which shall be known as the bureau of social surveys, and which shall collect information and data relating to the actual living conditions in Chicago, facilities for recreation, the causes of vagrancy, crime and poverty, and shall recommend to the city council appropriate ordinances or statutes for the practical betterment of such conditions. The chief officer of said bureau shall be known as the superintendent of the bureau of social surveys.

"Sec. 5. This ordinance shall take effect and be in force from and after its passage, approval and publication."

On April 23 following, the civil service commission classified all the offices and places of employment in the depart-

ment of public welfare, and afterward an examination was held for the office of superintendent of the bureau of social surveys, as a result of which the petitioner was on November 13, 1914, appointed by the head of the department of public welfare to the position of superintendent of the bureau of social surveys and entered upon the performance of the duties of the office on that day, and was paid at the rate of $3000 per annum for that portion of the month of November during which he worked, and for December, 1914. On January 18, 1915, the city council passed an ordinance appropriating the sum of $3000 for the office of superintendent of the bureau of social surveys. Prior to September 24, 1913, the civil service commission had passed a certain rule which has ever since remained in force, as follows:

"*Probation.*—Original appointment shall be on probation for a period of six months, but there shall be no probation period in the case of appointments from promotion lists. If any probationer, upon a fair test, shall be found incompetent or unqualified to perform the duties of the position to which he has been certified, the appointing officer shall certify the same to the commission in writing, specifying his reasons, and request the separation of such probationer. Upon approval by the commission such probationer shall be discharged. Time served on probation, whether continuous or not, shall be credited upon the period of probation."

The petitioner performed the duties of his office for the period of six months beginning November 13, 1914, up to and including May 12, 1915, but on May 13, 1915, the mayor, desiring to supplant petitioner with some other person of his own choice, directed the head of the department of public welfare to dismiss the petitioner, and at five o'clock in the afternoon of that day the head of the department of public welfare caused the petitioner to be notified that she had received instructions to dismiss the petitioner

from the office of superintendent of the bureau of social surveys. Afterward the commissioner of public welfare sent a written report concerning the petitioner's separation to the civil service commission, which approved her report. On May 19, 1915, another person was unlawfully appointed superintendent of the bureau of social surveys and has since been illegally receiving compensation for such employment · from the city. The civil service commission and the commissioner of public welfare refused to permit the petitioner to perform the duties of the office of superintendent of the bureau of social surveys, and they and the city treasurer and city comptroller refused to pay the petitioner his salary as the rightful and lawful incumbent of the office, though the petitioner has at all times been ready, willing, anxious and able to perform all duties required of him in the office.

The objections of the plaintiffs in error to the sufficiency of the petition are, that it does not state facts showing the legal existence of the office of superintendent of the bureau of social surveys; that it does not show that the ordinance set forth in the petition was passed by a two-thirds vote of all the aldermen; that it does not show that the petitioner's removal was in violation of the provisions of the Civil Service act and the rules of the civil service commission, and that it improperly joins a prayer for re-instatement of the petitioner in office with a prayer for the payment of his salary.

Courts do not take judicial notice of municipal ordinances. Such ordinances must be specially pleaded. · It is essential to the sufficiency of the petition that it should show the existence of the office in which the plaintiff seeks re-instatement. The office, not being of statutory or common law origin, could be created only by an ordinance of the city, and the petition purports to set forth such an ordinance. The plaintiffs in error contend that the existence of the ordinance is not shown, because by section 2 of article 6 of the Cities and Villages act an ordinance creating an office

requires a two-thirds vote of all the aldermen elected, and the petition does not allege that the ordinance in question was passed by such a vote. The allegation in the petition is that the ordinance was legally and lawfully passed. The adverbs "legally" and "lawfully," of course, add nothing to the allegation, and the question is whether the allegation of the passage of an ordinance of this character is sufficient without alleging its passage by a two-thirds majority of the aldermen elected. The word "passage," used in connection with a legislative enactment, refers to a compliance with all the forms made necessary by the law or the constitution to give the enactment force and validity. A legislative act is passed only when it has gone through all the forms required by the process of legislation to make it complete. Whether the vote required is a mere majority of a quorum, or a majority of all the members of the legislative body, or a still larger proportion of such members, the act is only passed when it has received such vote. An allegation that an enactment was passed is an allegation that it has gone through the required processes of legislation, and it is not necessary to set out in detail all those processes from the introduction of the measure to the final vote. The statute requires the yeas and nays to be taken on the passage of all ordinances and to be entered on the journal, but it is not necessary, in alleging that an ordinance was passed, to say that it was passed by a majority of the vote of all the members present voting by yeas and nays which were entered on the journal, any more than it is necessary to allege the particular ceremony by which a marriage was solemnized or the particular acts or words which resulted in the delivery of a deed. The statement that an ordinance was passed is an allegation of an ultimate fact and not a conclusion of law, and includes every requirement necessary to give the ordinance validity.

It is argued that this ordinance does not create the office of superintendent of the bureau of social surveys; that it

creates by the first section an executive department of the city to be known as the department of public welfare and by the second section the office of commissioner of public welfare, and that no other office is created. Section 3 creates a bureau of employment and declares that the chief officer of that bureau shall be known as the superintendent of the bureau of employment. Section 4 creates a bureau of the department of public welfare to be known as the bureau of social surveys, and declares that the chief officer of that bureau shall be known as the superintendent of the bureau of social surveys. The argument is made that this section fails to create the office of superintendent of the bureau of social surveys, but only declares that the chief officer of that bureau, when the office shall be created, shall be known as the superintendent of the bureau of social surveys, and reference is made to the case of *Moon* v. *Mayor,* 214 Ill. 40, and similar cases, in which the ordinance provided that the police department should consist, in part, of "as many policemen as the city council may from time to time provide for." In such cases the ordinance did not purport to create the office of policeman but simply to create a police department, expressly leaving the office of policeman to be provided for by the city council in the future. In *People* v. *McCann,* 247 Ill. 130, an ordinance establish-·ing an executive department of the city to be known as the department of police, and to embrace, among other officers, one inspector of police from each police division, was passed, and it was held that the ordinance created the office of inspector of police. The ordinance now under consideration creates an executive department to be known as the department of public welfare, in which are created two bureaus, to be known as the bureau of employment and the bureau of social surveys, the chief officers of which are named as the superintendent of the bureau of employment and the superintendent of the bureau of social surveys. The duties of the respective bureaus were prescribed, and the

ordinance sufficiently indicates the intention of the council · to start this executive department into operation at once with two bureaus, under the direction of a superintendent of each. These offices were not left to be provided for or prescribed in the future by the council but were then created by the ordinance itself.

The objection is made to various other allegations in the petition that they state conclusions of law and not matters of fact, but while the petition contains a number of immaterial allegations and may contain some legal conclusions of the pleader, it contains direct statements of fact sufficient to show the appointment of the petitioner, his service for six months and his removal the day after the expiration of that time.

Under the rule which has been quoted, original appointments are on probation for a period of six months. Section 10 of the act to regulate the civil service of cities provides, in part, that "at or before the expiration of the period of probation the head of the department or office in which a candidate is employed may, by and with the consent of said commission, discharge him upon assigning in writing his reason therefor to said commission. If he is not then discharged his appointment shall be deemed complete." The plaintiffs in error insist that the discharge of the petitioner was in accordance with this rule, and that the phrase "at or before the expiration of the period of probation" includes all of the day following the expiration of the period of probation. The statute (Hurd's Stat. 1916, chap. 131, sec. 1,) prescribes that the time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, and we have frequently decided that the correct mode of computing time where an act is to be done within a particular time after a specified day is to exclude the specified day and include that upon which the act is to be performed. (*Ewing* v. *Bailey,* 4 Scam. 420;

*Waterman* v. *Jones,* 28 Ill. 54; *Roan* v. *Rohrer,* 72 id. 582; *Gordon* v. *People,* 154 id. 664.) But the present is not such a case. The act is not to be done within a particular time after a specified day but is to be done within a particular period of time beginning with a specified day. "At or before the expiration of the period of probation" refers to the duration of such period, and the discharge was authorized only during that time. The plaintiffs in error assume that the six months' period of probation is a period of time excluding the day of appointment. No reason is suggested for such construction. The appointment was complete on November 13, 1914. The petitioner became superintendent of the bureau of social surveys on that day. The petition alleged that he began the performance of his duties on that day, and the rule provides that the time served on probation, whether continuous or not, shall be credited upon the period of probation. The same statute already referred to, prescribes the meaning of the word "month" to be a calendar month, and the calendar month ends on the corresponding day in the month succeeding its beginning, less one day. The time within which a probationer may be discharged is not within six months from and after his appointment, but at or before the expiration of the period of six months beginning with the day of his appointment. That period ends six months after his appointment on the corresponding day of the month, less one. The statute provides that if he is not then discharged his appointment shall be deemed complete. "Then" refers to the expiration of the period of probation. On May 12, 1915, the petitioner's period of probation expired and the attempted discharge on the next day was ineffectual.

It is insisted that the demurrer should have been sustained for the reason that the petition sought both the reinstatement of the petitioner and the payment of salary; that the latter relief was conditional upon the former, and the petitioner could have no clear right to it until after his

re-instatement, and that the petition shows he was not entitled to the relief in regard to the salary. If a person has been wrongfully prevented from performing the duties of his office he may recover his salary by an action at law for the time during which he was so prevented where it has not been paid to anyone performing the duties of the office. (*Bullis* v. *City of Chicago,* 235 Ill. 472.) Whether in such case he may recover from the municipality the salary which has been paid to a *de facto* officer who has performed the duties of the office while the *de jure* officer has been prevented from their performance is a question about which there is a conflict of authority. In *Dolan* v. *Mayor,* 68 N. Y. 278, and *Waggoner* v. *City of Louisville,* 117 S. W. Rep. 283, a recovery was denied, while in *Andrews* v. *Portland,* 79 Me. 484, *State* v. *Carr,* 129 Ind. 44, and *Rasmussen* v. *Commissioners of Carbon County,* 8 Wyo. 277, it was allowed. In *People* v. *Brady,* 262 Ill. 578, and *People* v. *Stevenson,* 270 id. 569, writs of *mandamus* were awarded requiring the re-instatement of the relators in the service of the State, from which they had been illegally discharged, and the payment of their salaries for the time during which they had been illegally prevented from performing their duties. This was done without regard to the question whether the State had paid their salaries to other persons illegally appointed in their places or not. The legal right to an office carries with it the right to the salary which is incident to the title to the office and not to its occupation and exercise. (*Bullis* v. *City of Chicago, supra.*) No obstacle exists to the granting of complete relief in one proceeding. The right of the defendant in error to his salary is as clear as his title to the office.　　　*Judgment affirmed.*