(No. 11770.—Judgment reversed.)
THE PEOPLE *ex rel.* Franz Sartison, Appellee, *vs.* WALTER
E. SCHMIDT *et al.* Appellants.

*Opinion filed December 19, 1917.*

1. OFFICES—*who is a de facto officer.* A *de facto* officer is one
who actually performs the duties of an office with apparent right,
under claim of color of appointment or election.

2. SAME—*salary paid to de facto officer while in office cannot be
recovered by de jure officer.* A salary or compensation which has
been paid in good faith to a *de facto* employee during the time the
position was in his possession cannot be recovered again from the
city, county, State or other governmental subdivision by the *de jure*
officer; and this rule applies with the same force to payments made
to a *de facto* occupant of a position of public employment although
not an officer. (*People* v. *Coffin*, 279 Ill. 401, distinguished.)

APPEAL from the Circuit Court of Sangamon county;
the Hon. E. S. SMITH, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, and CLAR-
ENCE N. BOORD, for appellants.

P. K. JOHNSON, and STEVENS & HERNDON, for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the
court:

Franz Sartison, the relator, filed his petition for a writ
of *mandamus* in the circuit court of Sangamon county in
November, 1916. A demurrer being sustained the relator
thereafter filed an amended petition. Answers were filed by
appellants, and the relator filed a general demurrer to said
answer. This demurrer was sustained by the court, and
the appellants having elected to abide by their answer the
court ordered the writ of *mandamus* to issue. From that
decretal order this appeal has been taken to this court.

The amended petition sets up, among other things, that
on and prior to July 1, 1911, the relator held a place or

position as grain helper in the East St. Louis grain inspection office of the State, and continued to hold that position until September 1, 1915, under the classified civil service of the State; that during said time he performed his duties in said position in a satisfactory and efficient manner; that on August 25, 1915, he received a letter from the deputy chief inspector informing him that he was discharged from the service and that charges had been filed against him by the State Civil Service Commission; that thereafter he reported daily for work, but from and after September 1, 1915, he was not allowed to work as grain helper; that on September 15, 1915, he received from the State Civil Service Commission a copy of the charges against him, charging that he had failed to obey the orders of superior officers and submit to certain examinations held by the State Civil Service Commission; that on October 23, 1915, he received a notice that he was discharged from said position; that on January 28, 1916, he received from the State Civil Service Commission a copy of an order stating that on account of the decision of the superior court in People *ex rel.* Estelle S. Baird *vs.* Stevenson he had been re-instated and would be allowed to resume his work as grain helper on February 1, 1916. The relator prayed that the respondents be required to place his name upon the pay-roll and pay him for the time he was illegally laid off as a grain helper.

The respondents in their answer admitted the facts as to the discharge and restoration of the relator as grain helper, and also averred that from September 1, 1915, until February 5, 1916, James A. Routh, who was eligible under the State Civil Service law for grain helper in the State grain inspection department at East St. Louis, was appointed to that position by the proper officials of the State and worked and received pay for his work in said position from September 1, 1915, to February 6, 1916. Respondents further alleged in their answer that there was no money appropriated in the appropriation bill for the year 1915

other than the money paid to Routh for service in said office that could be used for the payment of relator.

It is clear from the allegations of the petition and answer that the salary provided to be paid to the relator as grain helper in the East St. Louis grain inspection office was paid to James A. Routh during the time for which relator is now seeking to recover pay, and the principal question to be decided here is whether the payment of a salary provided for an office or position to a *de facto* employee or officer in said position is a good defense to a claim against the public corporation making such payment in an action against such corporation by a *de jure* officer or employee to recover such salary. This court in *People* v. *Lieb,* 85 Ill. 484, cited with approval *Brown* v. *Lunt,* 37 Me. 428, where a *de facto* officer is described as one who actually performs the duties of the office with apparent right, under claim or color of appointment or election. This court also in the same case quoted from *Ex parte Strang,* 21 Ohio St. 610, where it is said: "The true doctrine seems to be, that it is sufficient if the officer holds the office under some power having color of authority to appoint, and that a statute, though it should be found repugnant to the constitution, will give color." (See, also, as to a definition of *de facto* officer, *Lavin* v. *Cook County Comrs.* 245 Ill. 496.) We think, under these decisions, there can be no question that Routh was holding the office or position in question *de facto.* The general rule is, that if the payment of the salary or other compensation to be made by the government is made in good faith to the officer *de facto* while he is still in possession of the office, the government cannot be compelled to pay a second time to the officer *de jure* when he has recovered the office,—at least where the officer *de facto* held the position by color of title. (Mechem on Public Offices and Officers, sec. 332; McQuillin on Mun. Corp. sec. 518.) This rule, however, is not followed in all jurisdictions. (1 Dillon on Mun. Corp.—5th ed.—sec. 429.) This author

also says in this last cited section: "For reasons of public policy, and recognizing payment to a *de facto* officer while he is holding the office and discharging its duties as a defense to an action brought by the *de jure* officer to recover the same salary, it is held in many jurisdictions that an officer or employee who has been wrongfully removed or otherwise wrongfully excluded from office cannot recover against the city for salary during the period when his office was filled and his salary paid to another appointee. In some jurisdictions, too, this rule is applied to payments made to *de facto* occupants of positions which are mere employments and do not rise to the dignity of offices." In our judgment the rule governing payments to a *de facto* officer is founded in public policy, and applies with the same force to payments made to a *de facto* occupant of a position of public employment although not an officer, and this is the rule laid down in *Martin* v. *City of New York*, 176 N. Y. 371.

The authorities are in hopeless conflict on the question whether the *de jure* officer can recover from the public authorities the salary that has been paid in good faith to the *de facto* officer. The leading case, perhaps, holding that no such recovery can be had, is *Dolan* v. *Mayor*, 68 N. Y. 274, where it was said (p. 279) : "It is the settled doctrine in this State that the right to the salary and emoluments of a public office attach to the true and not to the mere colorable title, and in an action brought by a person claiming to be a public officer for the fees or compensation given by law his title to the office is in issue, and if that is defective and another has the real right, although not in possession, the plaintiff cannot recover. * * * But it does not follow from the conclusion that the defendant could have successfully defended an action brought by Keating to recover the salary of assistant clerk that it was not justified in treating him as an officer *de jure* when claiming it and paying it upon that assumption. It is clear that if the city could rightfully pay the salary to Keating during his actual in-

cumbency, and has paid it, it cannot be required to pay it again to the plaintiff. We are of opinion that payment to a *de facto* public officer of the salary of the office, made while he is in possession, is a good defense to an action brought by the *de jure* officer to recover the same salary after he has acquired or regained possession. * * * Public policy accords with this view. Public offices are created in the interest and for the benefit of the public. * * * It is important that the public offices should be filled, and that at all times persons may be found ready and competent to exercise official powers and duties. If, on a controversy arising as to the right of an officer in possession and upon notice that another claims the office, the public authorities could not pay the salary and compensation of the office to the *de facto* officer except at the peril of paying it a second time if the title of the contestant should subsequently be established, it is easy to see that the public service would be greatly embarrassed and its efficiency impaired. Disbursing officers would not pay the salary until the contest was determined, and this, in many cases, would interfere with the discharge of official functions." (See, also, *City of Terre Haute* v. *Burns,* 116 N. E. Rep. [Ind.] 604.) Many of the various authorities on this question *pro* and *con* are referred to and commented on in a note to *Nall* v. *Coulter,* (Ky.) 4 Ann. Cas. 673. See, also, *Commissioners* v. *Rhode,* 16 L. R. A. (N. S.) 794, and note; *Stearns* v. *Sims,* 24 id. 475, and note; 8 Am. & Eng. Ency. of Law, 812; 29 Cyc. 1430.

A discussion of the different views on this question is found in the majority and minority opinions of the Supreme Court of Michigan on this subject in *Board of Auditors* v. *Benoit,* 20 Mich. 176. It was there said in the majority opinion (p. 182) : "If courts themselves, when called on for affirmative action in aid of an officer, cannot inquire into his title, it cannot be reasonable to allow or to expect other bodies or persons to do so. No case is to be found

in which such an inquiry has been sanctioned, and nothing could be more unsafe." Again, on page 184: "There may be cases where the redress of the aggrieved party will be difficult, but the public convenience is not on that account to be sacrificed. It is important to have the right man in office, but it is more important to be able to deal safely with those who are actually in place, and there would be great hardship in allowing the whole public interests to be thrown into confusion whenever a contest arises for office. It would invite rather than prevent litigation if every claimant understood that by setting up a claim to office he could stop the salary of the incumbent." Judge Cooley in a very vigorous dissenting opinion argued in favor of a contrary rule, insisting that it was the duty of public officials, if they had any doubt about the question, to compel the *de facto* officer to sue for his pay, and thus there would be no obstacle in the way of inquiring legally as to whether he was entitled to hold the office or not.

This court has never been called upon to pass on this precise question. (See reasoning in *Mayfield* v. *Moore,* 53 Ill. 428.) In *City of Chicago* v. *Luthardt,* 191 Ill. 516, the plaintiff brought suit to recover his salary while wrongfully excluded from his position of chief clerk of the detective bureau, which had been held to be in the classified civil service of the city. The court, in discussing this question, after holding that Luthardt was entitled to the position under the Civil Service law, said (p. 522) : "The duties of the office during the time for which recovery is sought, it is true, were performed and the office held by one Joyce, who was a sergeant of detectives in the department of police, for which latter position a salary of $125 per month was appropriated. It does not appear that Joyce received his salary pertaining to appellee's office, and we regard it as immaterial that the appropriation for the police department of the city for the year 1898 is exhausted. If exhausted it was without authority of law so far as concerns

appellee's salary, as it does not appear to have been paid to Joyce, who without warrant of law held appellee's office and performed its duties." In *Bullis* v. *City of Chicago*, 235 Ill. 472, the court, in discussing a somewhat similar question, said (p. 480) : "If appellee was wrongfully prevented from performing the duties of his office he may recover his salary for the time during which he was so prevented, where it has not been paid to anyone performing the duties of the office." It is clear that the court in these two cases did not intend to hold, contrary to the general rule, that payment made in good faith to a *de facto* officer constitutes a bar against the city to a claim for the same salary made by the officer *de jure,* and nothing was said by this court to the contrary in *People* v. *Coffin,* 279 Ill. 401, *People* v. *Stevenson,* 270 id. 569, *People* v. *Stevenson,* 272 id. 215, or *People* v. *Brady,* 262 id. 578. In those cases the question at issue was not whether the relator was entitled to the salary after it had been paid to another, but whether or not he was entitled to the office, and incidentally to the salary. The question has never been passed upon by this court, where the salary has been paid, whether it could be recovered again from the city by the *de jure* officer. If the salary or compensation has been paid in good faith to a *de facto* employee during the time the position was in his possession, it cannot, on principle and by the weight of authority, be recovered again from the city, county, State or other governmental subdivision by the *de jure* officer.

Our conclusion on this question renders it unnecessary for us to consider or pass on the subsidiary questions raised in the briefs.

The judgment of the circuit court must be reversed.

*Judgment reversed.*