Charles F. McKinley, Appellee, v. City of Chicago, Defendant.
Samuel Heller, Appellee, v. City of Chicago, Defendant.

Gen. No. 39,311.

Heard in the first division of this court for the first district at the February term, 1937. Opinion filed October 18, 1937.

BARNET HODES, Corporation Counsel, for appellant; JOSEPH F. GROSSMAN, First Assistant Corporation Counsel and J. HERZL SEGAL, Assistant Corporation Counsel, of counsel.

MCKINNEY, FOLONIE & GREAR and DENEEN & MASSENA, both of Chicago, for appellees; HAYES MCKINNEY, DONALD N. SCHAFFER and JEFFREY SHEDD, all of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Plaintiffs McKinley and Heller were associate judges of the municipal court of Chicago. They sued to re-

cover portions of their salaries alleged to be unpaid. The complaint in each case contained three counts. The first claimed for the salary of the office during the period of time when it was, in fact, occupied by another. The second count claimed on account of unexpended appropriations for the judges of the municipal court, specifically mentioning vacancies due to deaths and resignations, which resulted in such unexpended appropriations. The third count was similar to the second with the exception that specific vacancies were not mentioned, the pleader relying on general allegations. The defense averred was that during the period of time for which plaintiffs sued their respective offices were occupied by judges *de facto,* who performed the duties of the offices, held the certificates of election and were paid by defendant. The cause was tried by the court. There was a finding for McKinley in the sum of $15,828.30, with judgment. There was a finding for Heller in the sum of $3,803.26, with judgment. The finding in each case was based upon the theory that defendant was liable only to the extent of unexpended appropriations as alleged in the second and third counts, and the amount recovered was so limited. Defendant contends it is not liable at all and appeals. Plaintiffs contend defendant is liable for the amount of their salaries less actual payments made to them personally and have filed a cross appeal.

The uncontradicted facts show that the controversy arose in this way: McKinley was one of the candidates for the office of judge of the municipal court of whom 12 were to be chosen at an election held November 4, 1930, to serve for a term of six years, beginning Monday, December 1, 1930. The canvass, upon the face of the returns, indicated that McKinley was not elected and that George C. McIntyre was elected. McIntyre was so declared, obtained the certificate, took the oath of office, assumed the duties of and occupied the office until his death July 15, 1934. December 10, 1930, Mc-

Kinley filed his petition in the county court of Cook county to contest the result of the election. On August 1, 1934, he obtained a decree in his favor; he thereupon was declared elected, was assigned to his duties as an associate judge of the court, and thereafter was paid the amount of his salary, $10,000 a year. On this appeal he claims for salary at the rate of $10,000 a year from December 1, 1930, the beginning of his term of office, until August 2, 1934, a period of three years, eight months and one day.

Heller was a candidate for the office of associate judge of the municipal court at an election held November 8, 1932, at which, also, 12 associate judges of the municipal court were to be chosen for a term of six years beginning Monday, December 5, 1932. The canvass of the returns indicated he was not elected. His nearest competitor was Irwin J. Hasten, who was declared elected, was given the certificate, qualified, assumed the duties of the office and occupied the same from December 5, 1932, until December 4, 1933. December 3, 1932, Heller filed his petition in the county court to contest the election. December 1, 1933, a decree in his favor was entered. In this suit Heller claims for salary at the rate of $10,000 a year from December 5, 1932, to December 4, 1933, a period of one year. As in the McKinley case, the defense presented was that payment was made by the city to Hasten, who was a *de facto* judge actually occupying the office and holding the certificate of election. As to both cases the city claimed that the payment was made in good faith. The question squarely presented on the record is whether a judge of the municipal court actually elected can recover his statutory salary for a period of time during which a competitor, who was proclaimed elected and received the certificate giving him color of title, entered into and performed the duties of the office, was paid the salary of the office by the municipality.

This question, so far as it concerns a judicial office, has not been passed upon in any case in so far as we are informed by the briefs. However, the question as concerning positions and offices generally has been considered often in different jurisdictions with conflicting and confusing results. *Dolan v. New York,* 68 N. Y. 274; *Andrews v. Portland,* 79 Me. 484, 10 Am. St. Rep. 280; *Stuhr v. Curran,* 44 N. J. Law 181; *Rasmussen v. Commissioners of Carbon County,* 8 Wyo. 277; *State ex rel. Gallagher v. Kansas City,* 319 Mo. 705, 725, 7 S. W. (2d) 357; *City of Cleveland v. Luttner,* 92 Ohio St. 493, 111 N. E. 280; *State ex rel. Greeley v. Milne,* 19 L. R. A. 689; *People v. Smyth,* 28 Cal. 21; *Board of Auditors v. Benoit,* 20 Mich. 176; 22 R. C. L. 41, sec. 240; Corpus Juris, vol. 33, p. 958.

A discussion of these cases in detail is quite impracticable, but an examination of a few of them may result in a better understanding of the decisions of our own courts, which, in the last analysis are, of course, determinative.

The leading case holding that a *de jure* officer may not recover in such cases is *Dolan v. New York,* 68 N. Y. 274. In the *Dolan* case the position involved was that of assistant clerk of the district court. The court said, *People v. Flynn,* 62 N. Y. 376, was decisive in favor of the plaintiff's title but that the appointment of the *de facto* officer, Keating (coupled with occupation) made him an officer *de facto;* that while the *de facto* officer could not maintain an action against the municipality for his salary because the right to the salary attached to the true and not the colorable title, actual incumbency merely gave no right to the salary or compensation; that if the occupant obtained the compensation he would be liable to the *de jure* officer therefor. However, if the city could lawfully pay the salary to the *de facto* occupant, it could not be required to pay it a second time. The ground for the decision

was public policy. It was said the fiscal officers could not safely perform their duties unless they could rely upon the apparent title of officers in making payment, and that under a contrary rule it might not be possible to get persons to perform official duties.

In the States which follow *Dolan v. New York,* the reasoning of that opinion has been adopted. The leading case to the contrary is *Andrews v. City of Portland,* 79 Me. 484, 490, 491, 10 Am. St. Rep. 280. There the plaintiff city marshal was illegally removed and another appointed, who performed the duties and was paid the salary. The plaintiff officer was reinstated by the courts. He sued the municipality to recover his salary which had been paid to his successor. The court said the salary followed the title to the legal office; that an office, while primarily an agency for public purposes, had a pecuniary value; that the right of the salary followed the legal title; that the fact that another was exercising the duties of the office under a color of title could make no difference; that A, who held a fund claimed by both B and C with notice of their claims, if he elected to pay one of them, did so at his peril. The opinion said that the cases were irreconcilable. In that case, the question was raised as to whether defendant was entitled to offset any amount earned by the plaintiff during the period in question by his personal labor. The court said no, because the right to salary was not by contract but by statute.

In Freeman's note to this case, 10 Am. St. Rep., all the cases are reviewed and stated to be irreconcilable. The annotator states that in *Dolan v. New York* and cases following it is placed on the ground partly that the *de facto* officer has no property right in his office and that compensation depended upon actual performance of services. The annotator affirms that none of the reasons given for the rule are well taken. He says: "If it is true, as must be admitted, that an officer de jure, though he performs none of the duties of the

office, may maintain an action against the officer de facto for fees or salary actually collected by him, or against the city or county, for salary accruing during the incumbency of the officer de facto, but not in fact paid to him, then it must be that the officer de jure has some property rights in the emoluments of the office, *and that these rights are not dependent upon his performance of its duties, but upon his title to the office,* and it is difficult to understand how the wrongful payment of his salary to a person not entitled to receive it can, in any respect, impair his right to recover it, as though no payment whatever had been made.''

The Supreme Court of Michigan divided upon the question in *Board of Auditors v. Benoit,* 20 Mich. 176. The office there involved was that of county treasurer. Miller was declared elected and occupied the office until ousted at the suit of Benoit who thereafter held for the remainder of the term. A majority of the Supreme Court held that a person holding the *indicia* of title was a legal officer until ousted so far as his official acts were concerned, that there could not be two incumbents of the office at one and the same time, that the only inquiry that could be made was by quo warranto, and that until the incumbent was ousted no other could enjoy the office. The doctrine of the validity of the acts of the officer *de facto,* the opinion stated, had been carried as far as possible, and *People v. Smyth,* 28 Cal. 21, was said to have no reasoning of its own and not to be warranted on principle. The dissenting opinion was by Judge Cooley, who pointed out that whether the acts of a *de facto* officer are valid or void *depends on the purpose for which they are considered,* that the public, whose necessities cannot await the slow process of litigation, has a right to treat as valid the official acts of the incumbent, with whom alone, under the circumstances, they could transact business. While this rule was obvious and necessary for the protection of organized society, the dissenting opinion said that the

party himself, who had usurped a public office, was never allowed to build up rights or shield himself from responsibility on no better basis than his usurpation. It cites with approval the language in *Riddle v. Bedford,* 7 Serge and Rawle 386, to the effect that the sound distinction is "that the office is void as to the officer himself, but valid as to strangers." The dissenting opinion said that there were no cases in conflict with these decisions; that Miller had not a shadow of claim to compensation and could not enforce payment by law; that when the auditors paid him they did so without legal compulsion and without necessity; and that the same rule or policy, which precluded Miller's right to the office being tried in a collateral proceeding to which he was a stranger, would preclude the settlement between Miller and the auditors being used to his prejudice. *People v. Smyth,* 28 Cal. 21, was said to be directly in point and sustainable "on the soundest reasons of public policy." Judge Cooley said: "A wrong is done to society and to public order in every instance in which the usurpation of a public office takes place; and the rules of law ought to be such as to give the greatest possible discouragement to such a proceeding. The county authorities, in a case like this, ought not to be told that they may countenance the intrusion with impunity, and deliver over to a usurper the emoluments of an office to which he·has neither a legal nor a moral claim. Such a rule encourages usurpations, and tends to lower the standard of public morality."

That Benoit had a remedy by suit for damages against Miller he said was no answer.

The result of all decisions seems to be well summarized by the editor of L. R. A., 19 L. R. A. 689, in the statement that while the larger number of jurisdictions follow *Dolan v. New York,* a very respectable number follow the other rule, which "seems to be the clearer in reason, and the weight of authority against it is by no means overwhelming." In the recent edition

of McQuillin on Municipal Corporations, vol. 2, sec. 537, p. 234, the tendency of recent cases is summarized in the statement, "However, *the more reasonable rule has often been applied,* namely, allowing the *de jure* office the salary from the public fund, although it has been received by the *de facto* officer." In some States the problem has been solved by the enactment of statutes which, in case of a contested election, requires that payment of salary shall be withheld and that any payment made is at the peril of the municipality. *Wynne v. Butte,* 45 Mont. 417, 123 Pac. 531.

The first and leading case in Illinois bearing on this question is *Mayfield v. Moore,* 53 Ill. 428, decided at the January term of the Supreme Court, 1870. Mayfield and Moore were candidates for the office of sheriff of Morgan county at an election held November 6, 1866. The canvass indicated that Moore was elected. He received the certificate and his commission, entered upon the duties of the office and continued to occupy the same from November 17, 1866 to January 13, 1868. Soon after the result was proclaimed Mayfield gave notice of contest and was finally declared by decree of the circuit court of Morgan county to have been elected. Moore sued out a writ of error in the Supreme Court, which was afterward dismissed, and thereupon Mayfield was commissioned and entered upon the duties of his office. Thereafter Mayfield sued Moore to recover the fees and emoluments of the office received by Moore while acting as sheriff. Upon the trial Mayfield offered to prove the amount of moneys received by Moore while he exercised the duties of the office, but the court limited plaintiff's evidence to proof of sums received after the judgment rendered in favor of Mayfield by the circuit court. The plaintiff therefore recovered only $34.55 and, claiming more, appealed to the Supreme Court which held that the fees and emoluments belonged to plaintiff Mayfield. The court said: "The fees of an office

are incident to it as fully as are the rents and profits of lands, the increase of cattle, or the interest on bonds or other securities.

"A person owning any of those things is, by virtue of such ownership, equally entitled to the issues and profits thereof as to the thing itself. . . .

"*In adopting the time when the circuit court decided that appellant was entitled to the office as the period from which he was entitled to have the fees and emoluments of the office, the circuit court erred.* That decision was no more potent to confer the right to the office than was the decision of the three justices of the peace. It, as we have seen, was not the decision but the vote of a majority of the electors of the county, that conferred the right. The court, on the evidence, found and declared the title, but did not confer it. We have seen that appellant was entitled to the office and its emoluments from the time appellee entered into it, and became liable to account for them from that date until he ceased to act and receive the fees and perquisites of the office."

In *Kreitz v. Behrensmeyer,* 149 Ill. 496, the parties were candidates for the office of county treasurer of Adams county, at an election held in November, 1886. Kreitz was declared elected by a plurality of 14 votes, received the certificate of election and commission, qualified and entered upon the duties of the office and so continued until his death in 1890. Behrensmeyer contested, and in *Behrensmeyer v. Kreitz,* 135 Ill. 591, the Supreme Court adjudged that he had been elected by a plurality of eight votes. (See also *Kreitz v. Behrensmeyer,* 125 Ill. 141.) April 6, 1892, Behrensmeyer filed a claim in the county court against the estate of Kreitz to recover fees and salary received by Kreitz while he occupied the office. There was a finding for plaintiff in the sum of $7,333, with judgment to be paid in the due course of administration. The administratrix appealed to the Supreme Court

and argued that the case should be considered as of first impression, regardless of *Mayfield v. Moore,* which had been decided under the Constitution of 1848. The estate contended that a different rule should obtain under the Constitution of 1870. The Supreme Court, after pointing out that there was no controlling statute, said that the common law of England was in force in Illinois, that the decisions of the courts were uniform to the effect that a *de jure* official has a right of action to recover against a *de facto* officer by reason of his intrusion into the office and the receipt by him of the emoluments thereof. The opinion cites with approval *Vaux v. Jefferson,* 2 Dyer 114; *Arris v. Stukely,* 2 Mod. 260; *Lee v. Drake,* 2 Salk. 468; *Webb's case,* 8 Rep. 45. In affirming the judgment the court said:

"We do not desire to enter on a discussion of the question as to whether it is a hardship on Kreitz or his estate that he should be held to receive no compensation for his services, for however great that hardship may be, the rule of law has been long settled in this State that the *de jure* officer may recover the fees or salary paid to a *de facto* officer. The rule is in accord with a sound public policy. Its tendency is, that there would be less danger or frequency of usurpation or intrusion into an office. Its tendency is to cause greater caution in and purify elections, as one with such danger attendant on illegal voting would abstain from encouraging it. Its tendency is to cause a careful investigation into the right to an office, where a notice of contest is served and petition filed. Public interest is in accord with private right when it is held that one lawfully elected to an office, and deprived of the office by another, may recover the salary or fees attendant on the office. The rule is not changed by reason of one holding a certificate of election and entering in good faith, under a mistaken belief of right."

In *Bullis v. City of Chicago,* 235 Ill. 472, it appeared that on March 14, 1898, Bullis was appointed a patrol-

man and served as such until November 1, 1903, when he was suspended under charges and thereafter, on January 5, 1904, was discharged. These proceedings were quashed on certiorari brought in the superior court and the judgment of the superior court was affirmed by the Supreme Court. Bullis, on June 1, 1906, was reinstated. He then sued for salary covering the period from his suspension until his reinstatement. Upon trial by the court there was a finding and judgment in his favor, which was affirmed by the Appellate Court. Upon further appeal to the Supreme Court that court said that if plaintiff claimed the salary for an office, it was incumbent upon him to show the legal existence of the office and his right to hold it, that the office did not exist at common law and if it existed was the creation of a statute or ordinance. The judgment was reversed because of lack of proof of the existence of the office. Upon trial the city asked the court to hold as a propostion of law that it was entitled to reduce its damages to the extent of the money which was or might have been earned or received by the plaintiff during the period of time covered by the suit. The trial court refused to so hold and the Supreme Court approved this ruling. The court said: ''If appellee was wrongfully prevented from performing the duties of his office he may recover his salary for the time during which he was so prevented, where it has not been paid to anyone performing the duties of the office. His earnings or opportunities to earn during that time were immaterial. *City of Chicago v. Luthardt,* 191 Ill. 516; *Andrews v. Portland,* 79 Me. 484; *State v. Carr,* 129 Ind. 44; *Rasmussen v. County Commrs.,* 8 Wyo. 277.''

In the later case of *People v. Bradford,* 267 Ill. 486, a petition was filed in the circuit court in the name of the People, praying a mandamus to compel the officials of the city of Ottawa to pay Bradford his salary as commissioner, to which office he had been elected. An

answer and pleas were filed to the effect that plaintiff had failed and refused to perform the duties of his office and had abandoned it, and that the council was without authority to vote him a salary. Plaintiff demurred to the answer, and the court sustained the demurrer and gave judgment for the plaintiff, which was approved by the Appellate Court, and a certificate of importance granted to the Supreme Court.

It was there argued for the defendant that there was no warrant in law for allowing a salary to a commissioner who had not discharged the duties of his office, and that plaintiff had abandoned his office and thereby forfeited the salary. The Supreme Court said: ''The law is well settled in this State that the right to the salary is attached to and follows the legal title to the office. This is true irrespective of the question by whom the services were, in fact, actually rendered. (*Mayfield v. Moore,* 53 Ill. 428; *Waterman v. Chicago and Iowa Railroad Co.,* 139 id. 658; *Kreitz v. Behrensmeyer,* 149 id. 496; *City of Chicago v. Luthardt,* 191 id. 516; *Bullis v. City of Chicago,* 235 id. 472.) In *City of Chicago v. Luthardt, supra,* it is said: 'The legal right to the office carries with it the right to the salary or emoluments of the office. The salary follows the legal title. This doctrine is so generally held by the courts that authorities hardly need be cited.' While this rule has been most frequently announced and applied in suits between *de jure* and *de facto* officers over the salary to an office, it is nevertheless a basic principle of law and one of general application. It has been so applied not only in cases of protracted absence and nonperformance of duties (*Bryan v. Cattell,* 15 Iowa, 538), but in cases of actual suspension from office. (*Wardlaw v. Mayor of New York,* 137 N. Y. 194; 33 N. E. Rep. 140; *City of Chicago v. Luthardt, supra.*)''

In *People v. Coffin,* 279 Ill. 401, Clarence Blachly filed a petition against the civil service commissioners

of the city of Chicago and other officials of the city, to compel his reinstatement as superintendent of the bureau of social surveys in the department of public welfare and for the payment of his salary from the date of his removal therefrom to the date of his reinstatement. A general demurrer to the petition was overruled. Respondents elected to stand by the demurrer and judgment was entered, which the Appellate Court affirmed. The Supreme Court granted certiorari. In the opinion in the case, filed June 21, 1917, rehearing being denied October 3, 1917, the court said: "If a person has been wrongfully prevented from performing the duties of his office he may recover his salary by an action at law for the time during which he was so prevented where it has not been paid to anyone performing the duties of the office. (*Bullis v. City of Chicago,* 235 Ill. 472.) Whether in such case he may recover from the municipality the salary which has been paid to a *de facto* officer who has performed the duties of the office while the *de jure* officer has been prevented from their performance is a question about which there is a conflict of authority. In *Dolan v. Mayor,* 68 N. Y. 278, and *Waggoner v. City of Louisville,* 117 S. W. Rep. 283, a recovery was denied, while in *Andrews v. Portland,* 79 Me. 484; *State v. Carr,* 129 Ind. 44, and *Rasmussen v. Commissioners of Carbon County,* 8 Wyo. 277, it was allowed. In . . . *People v. Stevenson,* 270 id. 569, writs of mandamus were awarded requiring the reinstatement of the relators in the service of the State, from which they had been illegally discharged, and the payment of their salaries for the time during which they had been illegally prevented from performing their duties. This was done without regard to the question whether the State had paid their salaries to other persons illegally appointed in their places or not. The legal right to an office carries with it the right to the salary which is incident to the title to the office and not to its occupation and exercise. (*Bul-*

*lis v. City of Chicago, supra.*) No obstacle exists to the granting of complete relief in one proceeding. The right of the defendant in error to his salary is as clear as his title to the office.''

In *People v. Schmidt,* 281 Ill. 211 (opinion filed December 19, 1917) it appeared that Sartison, the relator, filed an amended petition for mandamus in the circuit court of Sangamon county, in November, 1916, in which he set up that prior to July 1, 1911, he held the position of grain helper in the State grain inspection office and so continued until September 1, 1915. That on August 15, 1915, he received a letter from the deputy chief inspector discharging him and informing him that charges had been filed against him before the State Civil Service Commission. He, however, reported for work every day but after September 1, 1915, he was not allowed to work. On that date he received a copy of the charges against him. On January 28, 1916, he received from the commission a copy of an order stating that on account of the decision in *People ex rel. Baird v. Stevenson,* he had been reinstated and could resume his work on February 1, 1916. The relator prayed that his name be placed on the pay roll and respondents required to pay him for the time he had been illegally laid off. The respondents answered admitting the discharge and restoration but averred that from September 1, 1915 until February 5, 1916, James A. Routh, who was eligible under the State Civil Service Law as a grain helper, was appointed by the proper officials to that position, that Routh did the work and received the pay from September 1, 1915, to February 15, 1916, that no other money had been appropriated that could be used to pay relator other than the money paid to Routh. Sartison had judgment in the trial court. On appeal to the Supreme Court, that court said that Routh held the ''office or position'' *de facto,* and that the general rule was that if the payment of the salary or other compensation had been made by

the government in good faith to the officer *de facto* while he was still in possession of the office, the government could not be compelled to pay a second time to the officer *de jure* if he had recovered the office, at least where the officer *de facto* held the position by color of title. The opinion cites Mechem on Public Offices and Officers, sec. 332, and McQuillin on Municipal Corporations, sec. 518, but said that the rule was not followed in all jurisdictions, and that "the authorities are in hopeless conflict on the question whether the *de jure* officer can recover from the public authorities the salary that has been paid in good faith to the *de facto* officer." The opinion pointed out *Dolan v. New York,* 68 N. Y. 274, and quoted, apparently with approval, from the reasoning of that case. The opinion also cites *Board of Auditors v. Benoit,* 20 Mich. 176, and concludes: "This court has never been called upon to pass on this precise question. (See reasoning in *Mayfield v. Moore,* 53 Ill. 428.)"

The opinion then points out that in *City of Chicago v. Luthardt,* 191 Ill. 516, the opinion of the court stated that the duties of the office held by plaintiff, who was a sergeant of detectives, had been performed by one Joyce, who did not appear to have been paid the salary. Also quotes the statement in *Bullis v. City of Chicago,* 235 Ill. 472, that if a party was wrongfully prevented from performing the duties of his office he might recover his salary for the time he was thus prevented, "where it has not been paid to anyone performing the duties of the office." The opinion goes on to say that it is clear that the court in these two cases did not intend to hold contrary to the general rule that payment made in good faith to a *de facto* officer constituted a bar to a claim for the same salary made by the officer *de jure,* and that nothing had been said by the court to the contrary in *People v. Coffin,* 279 Ill. 401; *People v. Stevenson,* 270 Ill. 569; *People v. Steven-*

*son,* 272 Ill. 215, or *People v. Brady,* 262 Ill. 578. The opinion said that the question in those cases was whether the plaintiff was entitled to the office, "and incidentally to the salary." That the question had never been passed upon by the court where the salary had been paid as to whether it could be recovered from the city by the *de jure* officer, and closes: "If the salary or compensation has been paid in good faith to a *de facto employee* during the time the position was in his possession, it cannot, on principle and by the weight of authority, be recovered again from the city, county, State or other governmental subdivision by the de jure officer."

The opinion does not discuss the distinction between officers of different classes or between an office and a mere employment. It does not repudiate the reasoning in *Mayfield v. Moore,* 53 Ill. 428. It does not lay down any legal theories upon which the conclusion arrived at is based.

In the later case of *People v. Burdett,* 283 Ill. 124, relators were employed in the office of the State inspector of private employment agencies. They were employed under the State Civil Service Act. They were suspended by the chief inspector October 27, 1913. Charges were filed against them the following day. The matter was not heard finally until January 16, 1917, when they were ordered reinstated but without pay, because the delay in the hearing was the result of technical tactics used by them. While plaintiffs were under suspension the duties of the position were performed by persons under temporary writs issued by the Civil Service Commission. Relators prayed for writs of mandamus to compel the commission to certify and approve pay rolls for them. The court gave an opinion holding that the plaintiffs were not entitled to recover salary on the authority of *People v. Schmidt,* 281 Ill. 211, and stated without

argument that any contrary holding in *People v. Coffin,* 279 Ill. 401, was overruled.

In the later cases of *Hittell v. City of Chicago,* 327 Ill. 443; *O'Connor v. City of Chicago,* 327 Ill. 586; *McMahon v. County of Cook,* 210 Ill. App. 196; *Cord v. City of Chicago,* 235 Ill. App. 299; *Funkhouser v. Frazier,* 234 Ill. App. 387, the Supreme and Appellate Courts have applied the rule of the *Schmidt* case to similar subordinate positions.

Defendants contend that *People v. Schmidt,* 281 Ill. 211, and the cases following it are determinative. Plaintiff argues that these cases are not at all applicable since in each of them the subject matter was substantially only an employment or position under the civil service statutes and in no one of them was an office in the true sense of that word involved. It is, we think, significant that in every one of these cases the position, employment or office so-called was one in which the plaintiff derived his right from the city and State civil service statutes. Section 11 of the Civil Service Act for cities (see Ill. State Bar Stats., 1935, ch. 24, ¶ 696, § 11, p. 499; Jones Ill. Stats. Ann. 23.051) expressly exempts from its provisions officers who are elected by the people. Likewise the State civil service law (Ill. State Bar Stats., 1935, ch. 126A, § 11, ¶ 13, p. 2987; Jones Ill. Stats. Ann. 23.013) exempts all officers elected from its provisions and expressly exempts "all judges and officers appointed by judges of any court," etc. Both of these acts in effect place upon a civil service commission the power and duty of classifying the offices and places which are subject to its provisions. Is such a civil service appointee a public official within the meaning of the constitution and laws of this State? It is important to get a true conception of what a public official is and particularly of the nature of the judicial office. Blackstone declares an office to be a species of property, an incorporeal hereditament. Wendell's

Edition, vol. 2, p. 36. Blackstone's successor at Oxford has pointed out that this was an accurate statement of the law as it existed when the commentaries were written. He has also pointed out how in the ancient law things legally distinct, such as property, jurisdiction, etc., were blended together. How the distinction between powers of government and rights of property were not perceived, and the holder of an office, therefore, was held to have rights analogous to those of a tenant of the land, and if ousted was entitled to his action for disseizin. *Vaux v. Jefferson,* 2 Dyer 114. He points out that this confused conception continued in England until removed by statute. Holdsworth's History, vol. 2, p. 19 and pp. 248, 249. Apparently this confusion of thought did not cease when the States became independent but has persisted, resulting in the conflicting decisions we have reviewed.

The framers of our Constitution in section 24 of article 5 drew a distinction between an office and an employment. High on Extraordinary Remedies, 3rd ed., sec. 625, p. 581, defines a public office to be "a public position, to which a portion of the sovereignty of the country, either legislative, execution or judicial, attaches for the time being, and which is exercised for the benefit of the public." In *Eliason v. Coleman,* 86 N. C. 235, the Supreme Court of that State said that the true test of a public office seemed to be, "that it is parcel of the administration of government, civil or military, or is itself created directly by the law-making power."

In *People ex rel. Attorney General v. Loeffler,* 175 Ill. 585, the question was considered as to whether positions under the city civil service act were offices. It was argued that they were and that provisions of the civil service act violated the constitution for that reason. The court, however, held that the city civil service law was applicable only to subordinate places of employment in the public service, and that these places

were not offices within the strict meaning of the term. Upon that theory the court held that the city clerk must fill these positions in compliance with the provisions of the civil service law. In *City of Chicago v. Luthardt,* 191 Ill. 516, the position in controversy was that of chief clerk of the detective bureau of the department of police. The opinion of the Appellate Court, adopted by the Supreme Court, stated that the plaintiff was not an officer in the strict sense of the word.

In *People ex rel. Jacobs v. Coffin,* 282 Ill. 599, the position in controversy was that of an expert witness for the city. The court said there was no such office.

In *Ramsay v. Van Meter,* 300 Ill. 193, the court said, as was said by this court in *Fergus v. Russel,* 270 Ill. 304:

"There are two distinct elements in the above definition of the word 'office.' In the first place, it must be a public position and it must be created either by the constitution or by law; and in the next place, it must be a permanent position with continuing duties. To determine whether the first element is present we have but to look to our constitution and our statute to see whether the particular position under consideration has been created by the constitution or by law. To ascertain whether the second element is present it is necessary to determine the character of the position."

In the same case the Supreme Court said that the mere appropriation of money for the payment of compensation to the incumbent of a specified position did not have the effect of creating an office or give such incumbent the character of an officer. An office, the court said, could not be created by an appropriation bill.

In *Ramsay v. Van Meter,* 300 Ill. 193, the question was whether the public administrator of Cook county held an office and the court answered that question in the affirmative, quoting with approval from *Fergus v.*

*Russel,* 270 Ill. 304. See also opinion of the justices, 3 Greenleaf, 481.

It is apparent, we think, that under these decisions positions under the city or State civil service laws are not offices in the strict sense of the term, and are not public offices at all. That they are not offices in the same sense that the office of judge of the municipal court or the office of judge of the circuit court are offices is settled beyond question. In *People ex rel. Holdom v. Sweitzer,* 280 Ill. 436, the Supreme Court considers at great length the nature of the judicial office. The question there to be determined was when the salary of newly elected judges of the circuit court began, which in turn determined the question as to whether a statute which increased their salaries was applicable. An amendment to the law increasing the salaries of the judges of the circuit and superior courts of Cook county had been passed by the general assembly and approved by the Governor on June 24, 1915. Under the constitution it went into effect July 1, 1915. The election was held the first Monday in June, June 7, 1915, and it was not questioned that the relators were elected on that date. As a matter of fact, the commissions were issued by the Governor July 13th, and the relators contended that their respective terms began on that date and that they were entitled to the additional salary provided for by the new statute. The Supreme Court held that the terms of the judges began on the day they were elected, and that the relators were not entitled to the increased salaries. The court said:

"Where no time is fixed for the beginning of the term the person elected is entitled to the office from the date of the election. He is certainly entitled to it as soon as the election has been held, the votes canvassed and the result proclaimed as provided by the Election law. That may, in the case of a circuit judge, be the day after the election. As said in *Mayfield v,*

*Moore,* 53 Ill. 428, on page 432 of the opinion: 'Under the law, so soon as a majority of the votes were cast for appellant at the election held in pursuance to law he became legally and fully entitled to the office. The title was as complete then as it ever was, and no subsequent act lent the least force to the right to the place. The commission was evidence of the title but not the title. The title was conferred by the people and the evidence of the right by law. . . .' An office could not become vacant during a term unless it had been filled and the term of the occupant had commenced to run. According to the language of this section it must be assumed that the terms of office of the relators commenced with the election, that they were entitled to their offices by virtue of the election and receiving a majority of votes therefor, and that had they refused or neglected to take or file the oath of office within a reasonable time the offices would become vacant and could be filled as provided by law.''

This decision concerned the office of judge of the circuit court. That the office of judge of the municipal court of Chicago is not different in its nature appears from the recent case of *People ex rel. John H. Lyle v. City of Chicago,* 360 Ill. 25. That was an original proceeding in the circuit court by Lyle, one of the judges of the municipal court, to compel the payment by the proper authority of the salary of the judges of that court for the years 1932, 1933 and 1934. The respondent set up the defense that in order to meet the most essential needs of the city government it had become necessary to reduce all salaries, including those of relators, and that a financial emergency existed. The Supreme Court, after pointing out that sec. 11, article 9, of the constitution provides, ''the fees, salary or compensation of no municipal officer who is elected or appointed for a definite term of office, shall be increased or diminished during such term,'' and

that section 8 of the Municipal Court Act, Ill. State Bar Stats. 1935, ch. 37, ¶ 396; Jones Ill. Stats. Ann. 108.033, provides that, "the salary of no judge shall be increased or diminished during the term for which he shall have been elected," said that while recognizing the writ of mandamus might be refused, that the supposed emergency upon which the departure from the law was based was not found in the law, and, citing *Home Building & Loan Ass'n v. Blaisdell,* 290 U. S. 398, 78 L. Ed. 413, said:

"Relators are corporate authorities, and hence are municipal officers within the meaning of the constitution. (*People v. City of Chicago,* 310 Ill. 534.) Under its terms the city council was without authority to change relators' salaries during the respective terms for which they were elected. *People v. Sweitzer,* 280 Ill. 436; *Foreman v. People,* 209 id. 567."

The writ of mandamus was awarded.

From a consideration of all the authorities it is, we think, apparent that whether the name office or employment is used, the relationship of those who render service in public positions under the laws and constitution of this State are of two classes fundamentally different in their nature. In the first class the relationship exists through a title derived from the people in whom sovereignty resides. In the second class, the right is through the pleasure of some subordinate department official or agency. In the first class the occupant holds title for a fixed and definite time declared by law, while in the second the occupant serves for an uncertain, indefinite and undetermined period. In the first class the duties to be performed by reason of the relationship are independent in their nature, partaking of the nature of that sovereignty from which the right is derived, while in the second class the duties are subordinate in their nature and within the discretion of a superior agency or officer. In the first class

compensation, if any, is certain and unchangeable and cannot be either increased or diminished, is due and owing regardless of whether services are performed or not performed, while in the second class the payment of compensation is dependent entirely upon the performance of services, is uncertain in amount and may cease altogether when the necessity for the service is ended. Finally, in the first class, the possessor of the office has a title to the office bestowing upon the holder definite property rights, while in the second class he has a mere right of employment which may or may not be protected by statute .

In *People v. Schmidt* the position involved was of the second class, and in every case following *People v. Schmidt* the office involved was of the same subordinate kind and class. In not one of the cases can it appropriately be said that the plaintiff held title. It must be assumed, we think, that the court in the *Schmidt* case had in mind this distinction, and that the language of the opinion was intended to apply only to the positions of the second and not to positions of the first class. On this theory alone statements and opinions of the court otherwise inconsistent become harmonious and consistent. The language in the *Schmidt* case calling attention to the reasoning of *Mayfield v. Moore,* which is not disapproved; the assertion that the court had never before "been called upon to pass on this precise question"; the assertion that nothing to the contrary to that then declared had been said in *People v. Coffin,* 279 Ill. 401; the fact that *People v. Bradford* was not even mentioned in the opinion, are understandable only upon the theory that the decision in the *Schmidt* case is intended to apply solely to the particular class of office or position then under consideration by the court. This is the reasonable interpretation. That it was not intended to reverse *Mayfield v. Moore* or the cases that follow it is apparent from the fact that this

and similar cases have since been cited by the Supreme Court as authoritative. *Emery v. Hennessy,* 331 Ill. 296.

The position involved in *People v. Schmidt* was that of grain inspector; in *People v. Burdett,* inspector of private employment agencies; in *Hittell v. City of Chicago,* chief engineer of streets; in *McMahon v. County of Cook,* a watchman; in *Cord v. City of Chicago,* an arc light trimmer; in *Funkhouser v. Frazier* a deputy superintendent of police; in *O'Connor v. City of Chicago,* a chief clerk in the office of the city comptroller.

We hold *People v. Schmidt* and the cases following it are not applicable to a judicial office; that the salary incident to the judicial office attaches to the title to the office; that the title of the plaintiffs to their respective offices dates from the day they were elected; that the salaries incidental to the office are due and owing to them from these dates. We are constrained to accept this view by the very fact that every constitutional and statutory provision concerning the judicial office discloses the intention of the people and the legislature that it should not be or become a mere employment subject to the control of any other than the occupant of the office itself; that the judiciary is an independent office; that the function which it performs is a direct manifestation of the sovereignty of the State; that any ruling which would enable any other department of the government to deprive the judge of the salary and emoluments of his office would tend to its degradation.

Before these considerations the question of whether the salary might, on a rare occasion, be paid twice sinks into insignificance. The conclusion at which we have arrived makes it unnecessary to consider other questions argued in the briefs, such as the contention of the plaintiffs that the rule of *Dolan v. New York* is not applicable where, as here, the plaintiff is one of a class consisting of numerous individual officials, and

that under either theory plaintiff is entitled to recover to the extent of unexpended appropriations. Plaintiff McKinley, who was excluded for a period of three years, eight months and one day, is entitled to recover the unpaid statutory salary for that period, amounting to the sum of $32,384.44. Plaintiff Heller, who was excluded from the office to which he was elected from December 5, 1932 to December 4, 1933, a period of one year, is entitled to recover the salary unpaid to him for that period, amounting to the sum of $8,476.24. The cross errors of plaintiffs are sustained. The finding of the court therefore is that there is due to plaintiff McKinley the sum of $32,384.44, and to Heller the sum of $8,476.24.

The judgments of the superior court are therefore reversed and judgment is entered in this court upon these findings in favor of the plaintiffs for these respective amounts.

*Reversed with judgment here.*

McSURELY, J., concurs.

MR. PRESIDING JUSTICE O'CONNOR: I am constrained to dissent. *People v. Schmidt,* 281 Ill. 211; *People v. Burdett,* 283 Ill. 124; *Hittell v. City of Chicago,* 327 Ill. 443; *O'Connor v. City of Chicago,* 327 Ill. 586.