(No. 2760—

JOSEPHINE PENNIE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 11, 1938.*

GEORGE HOLLOWAY WEBB, for claimant.

OTTO KERNER, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

This case comes before the court on a stipulation of facts substantially as follows:

Claimant resides in the City of Chicago, and on September 19th, 1930 was certified by the Civil Service Commission to the position of senior department stenographer in the classified service of the State Athletic Association of Illinois, at a salary of $150.00 per month. She continued in such position until March 16th, 1933, upon which date Joseph Triner, then Chairman of the State Athletic Commission of Illinois, prevented her from working and ordered her not to work, and thereafter continued to prevent her from so working, and placed one Sarah Reedy in claimant's position to do her work.

Claimant filed her protest with the State Civil Service Commission, which Commission, on August 17th, 1933, rendered its decision finding that claimant had not been legally discharged nor properly laid off, and that she ought to be continued in the same employment, and ordered the

State Athletic Commission to reinstate her in the position of senior department stenographer and pay her salary from the date of her attempted dismissal to July 1st, 1933, in accordance with the prayer of her petition.

On August 21st, 1933 claimant reported to said Joseph Triner for duty as senior department stenographer and requested that she be assigned to work. Said Triner refused to allow her to work and refused to obey the aforementioned order of the Civil Service Commission and continued in such refusal until May 16th, 1934.

On January 9th, 1934 claimant instituted mandamus proceedings in the Superior Court of Cook County to compel obedience to the aforementioned order of the Civil Service Commission, and in such proceedings presented her demand for back wages, substantially as claimed in this proceeding. Before said mandamus suit came to trial, to-wit, on May 16th, 1934, claimant was reinstated in her former position and thereupon dismissed the mandamus proceedings.

The salary of said senior department stenographer was $150.00 per month at the time of claimant's original appointment, and continued at that amount until July 1st, 1933, on which date it was reduced to $112.50 per month, and so remained until May 16th, 1934.

Prior to the last mentioned date the money appropriated for the salary of said senior department stenographer had been paid to other employees.

Claimant seeks an award for the wages or salary of senior department stenographer from July 1st, 1933 to and including May 15th, 1934, to-wit, ten and one-half months, at $112.50 per month.

The Attorney General contends that claimant is not entitled to an award, and relies upon the rule laid down in the case of *The People* vs. *Burdett,* 283 Ill. 124, in which our Supreme Court said:

"One of the defenses interposed by appellants is that a de jure officer or employee who has been for a time wrongfully prevented from discharging the duties of his office cannot recover from the State the salary for such time when it has been paid to a de facto officer who has discharged the duties of the position during the period of time the de jure officer was prevented from discharging them. This was held to be a good defense in *People* vs. *Schmidt,* 281 Ill. 211, where the precise question here raised was passed upon and where it was held the de jure officer could not in such case recover."

In the case of *The People* vs. *Schmidt,* 281 Ill. 211, referred to in the Burdett case, the court, on page 213, said:

"The general rule is, that if the payment of the salary or other compensation to be made by the government is made in good faith to the officer de facto while he is still in possession of the office, the government cannot be compelled to pay a second time to the officer de jure when he has recovered the office,—at least where the officer de facto held the position by color of title."

The rule laid down in the Schmidt case and in the Burdett case was approved in the case of *Hittel* vs. *City of Chicago,* 327 Ill. 443, and in the case of *O'Connor* vs. *City of Chicago,* 327 Ill. 586.

In the consideration of the case now before the court, the following facts which have been stipulated must constantly be kept in mind, to-wit:

Claimant filed her protest with the State Civil Service Commission as provided by law; said commission had a hearing on said protest and rendered a decision therein on August 17th, 1933, finding that claimant had not been legally discharged nor properly laid off, and that she ought to be continued in the same employment, and ordered the State Athletic Commission to reinstate her in the position of senior department stenographer and pay her salary from the date of her attempted dismissal to July 1st, 1933; also that on August 21st, 1933 claimant reported for duty as senior department stenographer and requested that she be assigned to work, but the then Chairman of said Commission refused to allow her to work and neglected and refused to obey the order of the Civil Service Commission and continued to so neglect and refuse until May 16th, 1934.

The foregoing facts, stipulated as aforesaid, distinguish the present case from each and all of the cases hereinbefore referred to. In all of those cases the plaintiff sought to recover salary for a period of time prior to the time he was adjudged entitled to the position. In the present case, practically all of the time for which the claimant is seeking to recover salary is time which elapsed after she was adjudged entitled to the office, and after the Civil Service Commission had ordered her reinstated, and after she had reported for work and was refused permission to perform the duties of her position.

The reason for the rule laid down in the foregoing cases is set forth in the Hittel case (327 Ill.), on page 447, as follows:

"The exigencies of society require efficient performance of official duties, and to secure such performance prompt payment therefor is an essential requisite. Disbursing officers of municipalities are not clothed with judicial power to determine whether or not a person vested with the indicia of an office and performing the duties of such office is, in fact, a de jure officer *where there has been no judicial determination of such fact.* To require the public authorities to withhold the pay of an incumbent or public officer until a judicial decision, or pay the same at the peril of having to pay the same a second time, would be a source of much embarrassment and greatly tend to impair the efficiency of the public service. In the instant case, during all the time for which the compensation in question is claimed, a person other than plaintiff was the de facto chief street engineer for defendant (*People* vs. *Schmidt, supra*) and received the compensation for his services. *Plaintiff had not at that time been adjudicated the de jure chief street engineer.* Payment to such de facto employee was a good defense to this suit, and the Circuit and Appellate Courts erred in holding otherwise."

The language used by the Supreme Court in the Schmidt case, page 213, is significant. The court there said:

"The general rule is that if the payment of a salary or other compensation to be made by the government is made in good faith to the officer de facto while he is still in possession of the office, the government cannot be compelled to pay a second time to the officer de jure *when he has recovered the office,*" etc.

The natural inference from the language used is that the rule there laid down is confined to the time prior to the time when the officer de jure has recovered the office.

Attention is called to the fact that in the Hittel case the court in the quotation above set forth specifically limits the reason for the rule to cases *"where there has been no judicial determination of such fact."* Also, that such court, in speaking of the right of the plaintiff in that case to recover, specifically pointed out that "plaintiff had not at that time been adjudicated the de jure chief street engineer."

The reasons set forth in the Hittel case, as the basis for the decision of the court, have no application to the present case, as to the period of time after the claimant had been adjudicated entitled to the position, and consequently the rule announced in such case cannot be held to apply in this case as to such period of time. The decision of the Civil Service Commission definitely established the right of the claimant to the position. As to the wages for the period prior to the time claimant was adjudged entitled to the office, the rule laid

down in the Schmidt case, the Hittel case, and other similar cases undoubtedly applies, but as to the time subsequent to the decision of the Civil Service Commission, such rule has no application.

The rule announced in the Schmidt, Burdett and Hittel cases must be considered in the light of the facts in such cases, and cannot be extended to cover an entirely different statement of facts.

The only case in this State which we have been able to find in which the facts are similar to the facts in the case at bar is the case of *The People* vs. *Thompson*, 316 Ill. 11. In that case Thompson for some time prior to September 23d, 1922 was the legally appointed and qualified second assistant fire marshal of the City of Chicago, a position classified under the Civil Service law. On the last mentioned date he was brought before the commission on certain charges preferred against him and the commission entered an order directing his discharge. Subsequent to November 1st, 1922 one Patrick Egan discharged the duties of the office and received the compensation therefor.

In certain certiorari proceedings in the Circuit Court of Cook County, the record of the Civil Service Commission discharging Thompson was ''quashed and for naught esteemed,'' by the judgment of the Circuit Court in such proceedings, entered December 18th, 1922. On January 14th, 1923 Thompson served a written notice of the order of the Circuit Court upon the proper authorities of the City, and demanded that he be restored to his position, and that he be paid the salary appropriated for such office from December 18th, 1922, the date of the aforementioned judgment of the Circuit Court. The defendants refused to recognize Thompson as second assistant fire marshal and the defendant Egan continued to discharge the duties of the office and draw the pay therefor. In disposing of the question there involved, the court, on page 16, said:

"The rule in this State is, that the payment in good faith of the salary of an officer to a de facto officer constitutes a bar to an action by the de jure officer for the salary paid to the de facto officer. (*People* vs. *Schmidt*, 281 Ill. 211.) The well defined exception to the above rule is that where the relator is illegally removed from his office and the salary has been paid to another person illegally appointed in his stead a writ of mandamus will be awarded requiring the re-instatement of the relator in office and the payment of his salary during his illegal removal. (*People* vs. *Brady*, 262 Ill. 578;

*People* vs. *Stevenson*, 270 id. 569; *People* vs. *Coffin, supra*). The relator in this case was clearly entitled to be paid his salary from December 18, 1922, the date of the judgment of the circuit court in the certiorari proceedings, and is entitled to the writ to compel the payment of the same."

The court recognized the general rule as laid down in the Schmidt case, but further recognized an exception thereto under the facts in the case before the court. The facts in the present case are similar to the Thompson case, and in accordance with the rule there laid down, the claimant is entitled to recover the salary of her position from the date she reported for duty, to-wit, August 21st, 1933, to May 16th, 1934.

To sustain the contention of the respondent herein would be to destroy entirely the effectiveness of the Civil Service Law. Employees in the classified Civil Service could be discharged at the whim or caprice of the officer in charge, and others placed in such positions and paid the salary therefor. If recourse were had by the ousted employee to the Civil Service Commission, and an order entered directing the re-instatement of such employee, such order could be disregarded, and the de facto appointee could be continued in office and receive the salary thereof. If the ousted employee then had resort to mandamus proceedings, and a writ was awarded, the writ could still be disregarded, the de facto appointee could be still continued in office and paid the salary thereof, and the person who had been adjudged to be legally entitled to the office would have no relief. The person refusing to obey the mandate of the court might subject himself to proceedings for contempt of court, but under the rule contended for by the respondent, the de facto employee would continue to receive the salary of the position, and the ousted employee by reason thereof would be barred from recovery. Such cannot be the law.

The views here expressed are also supported by the opinion of the Supreme Court of the United States in the case of *U. S.* vs. *Wickersham*, 201 U. S. 390, 50 Law Ed. 798.

Award is therefore entered in favor of the claimant for the wages or salary of her position from the time she reported to work after the aforementioned decision of the Civil Service Commission, to-wit, August 21st, 1933, to May 16th, 1934, at $112.50 per month, to-wit, Nine Hundred Ninety-three Dollars and Seventy-five Cents ($993.75).